# TAYLOR v. READING CO.
## Civ. A. No. 5362.

United States District Court
E. D. Pennsylvania.

Feb. 14, 1949.

Harry R. Kozart and Nathan Kessler, both of Philadelphia, Pa., for plaintiff.

Henry R. Hecbner, of Philadelphia, Pa., for defendant.

GANEY, District Judge.

David Taylor was killed as the result of injuries sustained by him while he was operating a crane in the course of his employment. In an action under the Federal Employers' Liability Act[1], the jury, after the defendant offered no evidence on its side of the case, returned a general verdict in favor of the plaintiff, executor of the estate of the deceased. Defendant has moved to set aside the verdict and judgment entered thereon and to have judgment entered in accordance with its motion for a directed verdict. The reason given therefor is that the evidence, viewed in the light most favorable to the plaintiff, could not support a finding of negligence on its part.

On April 25, 1945, at Port Richmond, Philadelphia, the deceased, an experienced crane operator, was removing ore from a gondola car to a hopper of the National Carbon Company located alongside a railroad trestle. The transfer of the ore was accomplished by means of a twenty year old railroad steam locomotive crane which he operated with the assistance of a fireman. It was the latter's main job to see to it that sufficient steam pressure was maintained in the boiler of the crane and to apply, when necessary, the hand brake on the gondola car. The body of the crane rotated upon a twenty-four by eight foot flat car. It supplied its own steam power both for loading and unloading op-erations and locomotion. Its bucket, of the clam shell variety, was suspended from the boom, fifty feet in length, by means of two steel cables which passed over the top of the boom and ran down to and around revolving drums similar to those in a winch. The boom could be hoisted and lowered between the horizontal and perpendicular positions only in a vertical plane. The operator and the fireman on the crane were protected by a housing structure; the drums, with the exception of the friction blocks, which were partly shielded by fenders, were exposed to the weather. The friction blocks, when properly worked by a hand lever by the operator, squeezed around or gripped the drums. Revolving motion could not be transmitted to the drums unless the friction blocks gripped them properly. Water between the friction blocks and the drums would hamper this gripping process.

Despite the fact that it was raining heavily that day, the deceased and the fireman continued to work. They were not instructed to stop working during rainy weather. With the aid of the crane's locomotive power, a gondola car, after it had been filled with manganese ore, was moved to a convenient position along the railroad trestle. At that position, the ore in the car could be picked up by the crane's bucket, swung through almost a semi-circle and dropped into the hopper. Until about 2:30 in the afternoon, no difficulty had been encountered in the operation of the crane. At that time, when the rain was coming down in torrents, the crane, during one of its rotating swings from the gondola car to the hopper with a filled bucket of ore, toppled over on its side in the direction in which the boom and bucket were swung, trapping the deceased in the wreckage. Steam escaping from the broken pipes of the crane scalded him severely. He died several hours later. The fireman escaped injury by leaping from the crane when his sense of equilibrium warned him that it was becoming unbalanced. Except to the extent that the fireman may be considered as such, there were no eyewitnesses to the accident. Prior to its toppling over, the crane did not strike any object, nor was

[1] 35 Stat. 65, as amended, 36 Stat. 291, 53 Stat. 1404, 45 U.S.C.A. § 51 et seq.

there, as far as the fireman could discern, any unusual jerking motion in its operation.

The deceased was the only person in charge of the movements of the crane and it was his responsibility for setting the boom at the proper angle, depending upon the weight of the load to be carried. Defendant relied upon his skill and judgment with respect to such operations. The deceased, before starting to operate the crane, was charged by his employer with the duty of inspecting the drums, cables and other operating mechanism in order to determine whether they were in satisfactory condition for use. He had nothing to do with examining the mechanism underneath the crane's housing. His inspection of the crane would at most be superficial, for a defect, unless apparent to the eye, could not be known until there was a failure of efficient function in the crane's operation. If it were found to be in need of repairs, the operator was instructed to report it to the proper authorities and not to use it until the required repairs had been made. With the exception of the boiler, the defendant did not provide for periodic inspections of the crane in question but made repairs only after a defect had been reported by the operator. The crane involved in this case had undergone repairs, particularly with respect to its drums, every few days during the month preceding the fatal accident.

■ In our opinion the facts and attending circumstances warranted an inference of negligence on the part of the defendant under the doctrine of res ipsa loquitur as it is applied in the Federal courts. It is claimed by the defendant that the doctrine may not be resorted to in this case. One of the requirements, it points out, which must be met before the doctrine is applicable is that the one charged with blame be in exclusive control of the device which caused the injury. Therefore it reasons that since the undisputed facts show that the deceased was operating the crane which caused his death, the jury had no right to infer that it was negligent.

■ Were we to apply literally the doctrine as it is announced in the decisions, there would be some merit to defendant's position. But it must admit that Federal juries have been permitted to draw inferences of negligence in cases where the parties charged with liability were not in exclusive control, in the physical sense, of the devices or things which caused the injuries complained of. See Jesenowski v. Boston & Main R. Co., 1947, 329 U.S. 452, 67 S.Ct. 401, 91 L.Ed. 416, 169 A.L.R. 947; Sweeting v. Pennsylvania R. Co., 3 Cir., 1944, 142 F.2d 611; Pitcairn v. Perry, 8 Cir., 1941, 122 F.2d 881; Eker v. Pettibove, 7 Cir., 1940, 110 F.2d 451; Central R. Co. of New Jersey v. Peluso, 2 Cir., 1923, 286 F. 661. From these cases we gather that exclusive physical control is not a sine qua non for the application of the doctrine; legal control, responsibility for the proper and efficient functioning of the device which caused the injury, and a superior, if not exclusive, position for knowing or obtaining knowledge of the facts which caused the injury are sufficient.

■ Another factor which may be noted, is that the court, as is customary under the Act, instructed the jury on comparative, or more properly, proportional negligence. It told them if they found the plaintiff to be negligent such negligence would not defeat the plaintiff's right to recover, but would act to diminish or lessen the verdict which they might render. From the verdict, taking into consideration the charge of the court, we may conclude that the jury made one of the following general findings: that the deceased was blameless and the defendant negligent, or the deceased was negligent, but the defendant was more so.

While the defendant disagreed with the court's charge to the jury on the doctrine of res ipsa loquitur, and the instruction that an inference of negligence on the part of the defendant might be drawn from the happening of the event, it failed, however, to take exception to that phase of the charge concerning comparative, more properly proportional; negligence. It also failed to ask for a new trial. In view of Rule 59(b, e) of the Federal Rules of Civil Pro-

cedure, 28 U.S.C.A., the defendant may not be granted a new trial. Therefore the question is not posed here as to whether the doctrine of res ipsa loquitur can be applied under the Act only if the injured person is free from fault and thus deny the plaintiff the benefit given him by the Act of having the injured person's negligence, if any, being considered only as going to the mitigation of damages instead of a complete bar to recovery.

Motion denied.