HUGH CRUCE, Respondent, v. GULF, MOBILE & OHIO RAILROAD COMPANY, a Corporation, Appellant, No. 41882—238 S. W. (2d) 674.

Division Two, April 9, 1951.

*Wayne Ely* and *Robert C. Ely* for appellant; *D. S. Wright* of counsel.

*John H. Haley, Jr.,* for respondent.

[676] TIPTON, J.—One of our Commissioners prepared an opinion in this case which received a unanimous vote of the Judges of this Division except as to one assignment of error. We will adopt without quotation marks that part of that opinion that met with the approval of the Court.

Hugh Cruce was the Gulf, Mobile and Ohio Railroad Company's coal chute foreman at Union City, Tennessee. The five hundred fifty pound coal chute pan was fastened to a steel cable and the pan was lowered and raised over a pulley attached to counterweights. On the 30th day of May, 1946, as Mr. Cruce was in the process of "coaling an engine," the steel cable broke and the chute pan fell upon him and he was seriously injured. Upon this the second trial of his action under the Federal Employers' Liability Act a jury awarded him $52,500.00 for his injuries. The trial court required a remittitur of $12,500.00 and the railroad appeals from the $40,000.00 judgment. Upon the first trial a jury returned a verdict for $45,000.00 and the trial court required a remittitur of $10,000.00. The railroad appealed from that judgment and it was held, under the evidence, that the cause was properly submitted as a res ipsa loquitur case, but the judgment was reversed and the cause was remanded because of an erroneous instruction. Cruce v. Gulf, Mobile & Ohio R. Co., 358 Mo. 589, 216 S. W. 2d 78.

It is insisted upon this appeal that the court is not bound by the previous opinion and decision, as the law of the case, that the plaintiff was entitled to a res ipsa loquitur submission of his cause for the reason that the evidence upon this trial as to the exclusive control of the cable was different from the evidence adduced upon the first trial. In addition, it is urged that the court erred in the first ruling and that the error should now be corrected. The railroad made virtually the same argument upon the former appeal but for somewhat different reasons. It was there argued that the cable broke because of a latent defect, one that could not have been discovered by a reasonable inspection, that the railroad did not have exclusive charge or control of the cable and did not and could not possess superior knowledge or means of knowledge as to the cause of the occurrence. It was argued then, as it is now, that it was Mr. Cruce's duty to inspect the cable and report any defect. In answer to the argument the court pointed to the following salient parts of the evidence: "Plaintiff testified that he knew nothing about cables and was not instructed with reference thereto or that it was his duty to make such inspections. Defendant offered in evidence a deposition, taken on behalf of plaintiff, of a man named Stokes who had preceded plaintiff as foreman at the chute. This [677] witness testified that he did not inspect

the cables and had no instructions to do so. He further testified that while he was foreman the cables were changed, the work having been done by the carpenter gang known as the bridge and building department. From this evidence it can be inferred that someone other than the men working at the chute determined when the cables needed replacing. The evidence also justifies the finding that it was not the duty of plaintiff to inspect the cables." The fundamental test of the applicability of res ipsa loquitur, "that the instrumentality be under the management and control of the defendant does not mean, or is not limited to, actual physical control, but refers rather to the *right of control* at the time" (McCloskey v. Koplar, 329 Mo. 527, 535, 46 S. W. 2d 557, 560; Taylor v. Reading Co., 83 F. Supp. 804), was applied and it was held, in the circumstances, that Mr. Cruce was entitled to a submission of his cause upon the basis of the relationship and the occurrence.

The railroad's argument that the evidence upon the second trial differs from the evidence upon the first trial and that therefore the former decision is not the law of this case involves two further contentions, one concerning the admissibility of certain evidence and the other concerning the legal effect of certain testimony, and it is a necessary prerequisite to the railroad's basic argument that it be sustained as to these assignments of error.

 The first contention involves a part of Mr. Cruce's evidence. He testified upon this trial, as he did upon the first trial, that it was not his duty to inspect the cable. It is urged that the trial court erred in permitting him to so testify to the conclusion (Annotation 90 A. L. R. 749) and that when the conclusion is ignored there is no contradictory evidence as to the fact of his duty to inspect and eventually of his control of the instrumentality. Mr. Cruce detailed his experience and work with the railroad beginning in 1906 as a section man, later as a section foreman and after December 1945 as a coal chute foreman. As pointed out in the former opinion, he detailed his qualifications, knowledge and experience and testified that it was not his duty to inspect, or repair or even to supervise the repair of the cables. But upon the basic question of the admissibility of his evidence, it is plain from the conflicting evidence and inferences on the subject that the duties of the coal chute foreman, and of others, with respect to the cable is not the subject of general knowledge but is dependent upon a knowledge of facts peculiar to railroading, and railroad rules and practices and is properly the subject of expert evidence. Davis v. Sorrell, 213 Ala. 191, 104 So. 397; Temple v. Gilbert, 86 Conn. 335, 85 Atl. 380. In addition to his evidence, however, as was pointed out in the former opinion, there was other evidence from which it was a fair inference that Mr. Cruce did not have the duty of inspecting the cables and of determining that they needed replacing. So irrespective of his testimony, which in any event was not such pre-

judicial error as to require a new trial, there was evidence from which the jury could draw the inference that he did not have the duty to inspect and repair and, therefore, did not have concurrent control of the offending instrumentality.

The other phase of the railroad's twofold argument that the former opinion is no longer the law of the case is the fact that upon this trial the plaintiff introduced in evidence, as a part of his case, the deposition of Mr. W. W. Greiner, the railroad's chief engineer. Mr. Greiner described the organization, function and duties of the entire department—chief engineer, roadmaster, supervisor, section gangs, each under a foreman, bridge gangs, each under a foreman, and here three coal chute employees including the foreman. He testified that it was the duty of Mr. Cruce as coal chute foreman, who worked the day shift from eight to four o'clock, to see to it that the equipment at the coal chute was in proper·working order and if there was anything wrong with the cable or it needed repairing or replacing that it· was his duty to report the fact, order the necessary repairs and see to it that the repairs were made. It is argued that this evidence proves, as a [678] matter of law, that Mr. Cruce had *"concurrent control* of the cable with other employees of defendant" and consequently the cable was not under the railroad's exclusive control. Undoubtedly Mr. Cruce, as coal chute foreman in charge of the chute, as well as other employees, would have reported a broken cable had one been observed, but it is not necessary to a decision of this case to determine whether that fact alone would establish such lack of control in the railroad or such concurrent control in the plaintiff and the railroad as to prevent the applicability of res ipsa loquitur. Compare: Taylor v. Reading Co., 83 F. Supp. 804; Pitcairn v. Perry, 122 F. 2d 881. As has been indicated, in order to establish its argument of concurrent control and therefore of the inapplicability of res ipsa loquitur, the railroad insists, since Mr. Cruce introduced Mr. Greiner's deposition, that he is conclusively bound by it and, having introduced evidence that the defendant did not have exclusive control, the court can no longer indulge the inference upon which the first opinion was founded because there is now proof of the undisputed fact inconsistent with it. Except for Mr. Greiner's testimony, admittedly, "Substantially the same evidence was again presented at the second trial." ·As the quotation from the former opinion and our discussion of Mr. Cruce's testimony demonstrates, Mr. Greiner's evidence was contradicted, not only by Mr. Cruce but by others, and he is not conclusively bound by it, and neither does it so establish the fact that no other inference is permissible. Holmes v. McNeil, 356 Mo. 846, 204 S. W. 2d 303; Summa v. Morgan Real Estate Co., 350 Mo. 205, 165 S. W. 2d 390. The evidence upon the second trial was substantially the same as it was upon the first trial and the court did not err as to the fundamental basis of liability and that decision is the law of this

case. Maxie v. Gulf, Mobile & Ohio R. Co., 358 Mo. 1100, 219 S. W. 2d 322.

In this connection it is urged that the court erred in permitting the plaintiff's expert witnesses, Gillen and Trowbridge, to speculate as to what could have caused the cable to break. It is insisted that of the ten various causes enumerated by them only six were supported by the evidence. The railroad says, "We cannot point to any page of the transcript to support that statement but can only submit the entire transcript as being void of any evidence tending to show the existence of any of those four possible causes *. * *." The four were constant use, jerk or pull of extreme pressure, erosion or wearing away and absent hemp core due to rotting or wearing away. One of the cables was changed in 1941. They had been there since 1926. They were outside the coalbin and obviously exposed to the elements. They were grimy and constantly covered with coal dust. The chute pan alone weighed 550 pounds and there was no dispute as to the use, over a period of years, as to either the chute or the cable. A section employee, a railroad witness, examined the cable after it broke and he said that it was rusty, that it was "dry, down, oh, about two foot and a half where the cable worked from the weight," that it was coated with coal dust, that the hemp core was dried and the wire strands were broken around it. The opinions of the experts, in point of fact, were based upon hypothetical questions which incorporated facts that had been testified to or which were, as indicated, fair inferences from the facts and there was no error in permitting them to testify to what could have caused the cable to break. Kimmie v. Terminal R. Assn., 334 Mo. 596, 66 S. W. 2d 561.

Related to the assignment that the plaintiff was not entitled to a res ipsa loquitur submission of his case are the assignments that the court erred in instructing the jury. The first of these is that instruction one erroneously assumes that the cable was in the exclusive control of the railroad or of employees other than the plaintiff and the second is that instruction three is confusing and misleading in its definition of exclusive control and erroneously infers that the mere right to control constitutes exclusive control. Instruction three defined the terms "negligence" [679] and "exclusive control" as they were employed in the instructions. It said that "by 'exclusive control,' as that term is used * * * is meant 'the right of exclusive control,' and does not mean 'physical control.'" What we have said of the merits of the cause and of the plaintiff's right to a res ipsa loquitur submission of his case is probably a sufficient answer to the railroad's objection to this instruction. The definition is the test applied upon the former appeal (Cruce v. Gulf, Mobile & Ohio R. Co., supra) and in Maxie v. Gulf, Mobile & Ohio R. Co., supra. The instruction is an abstract statement of the law or, more accurately, a definition (DeMoulin v. Roetheli, 354 Mo. 425, 189 S. W. 2d 562)

and when read with the railroad's instructions two and four, also defining the term and specifically instructing the jury as to the proof required could not have misled the jury or have been prejudicial to the appellant.

In part, instruction one said, ''The Court instructs the jury that if you find and believe from the evidence that on May 30, 1946, it became and was the duty of plaintiff, in the course and scope of his employment by defendant, to lower the coal storage bin delivery chute,.mentioned in evidence, to the tender of an engine of a freight train en route from St. Louis, Missouri, to Union, Mississippi, if you so find; and if you further find that said delivery chute was supported and balanced by counter-weights and a cable which were in the exclusive control of defendant or of employees of defendant other than plaintiff; * * *.'' It is urged that this instruction is erroneous in that it does not require a finding of exclusive control in the railroad but assumes that it was. The railroad says, ''The phrase, 'which were in the exclusive control of defendant or of employees of defendant other than plaintiff' is an adjectival phrase descriptive of counter-weights and a cable' '' and thus the cable is described as being in the exclusive control of the railroad. It is urged that the basic issue is hidden and assumed. As has been indicated, this subject was quite adequately covered and at the close of the final arguments there could have been no doubt in the minds of the jurors as to the importance and significance of this issue. In the second place, the railroad's argument ignores the introductory language of the clause ''and if you further find.'' Under its argument this phrase of the instruction and all other phrases in the clause would necessarily be preceded by ''if you so find,'' or followed by ''if so,'' a practice no longer deemed necessary, but condemned, unless the words add meaning to the instruction. Menke v. Rovin, 352 Mo. 826, 834, 180 S. W. 2d 24, 27.

In connection with the plaintiff's medical proof two doctors, an orthopedic surgeon and a doctor who specialized in nervous and mental diseases, testified as experts and gave opinions as to the nature and extent of Mr. Cruce's injuries. The expert in nervous and mental diseases gave it as his opinion that Mr. Cruce's brain and spinal cord had been damaged. It is urged, in connection with these witnesses, that the court erred in permitting one of them to testify to ''subjective complaints made to him by plaintiff'' and that the other one likewise testified to subjective complaints and, in part, based his opinion of the plaintiff's disabilities upon subjective complaints and past history as related to him by plaintiff In short, the appellant contends that the testimony of these two doctors falls within the practice and testimony condemned in Berry v. Kansas City Pub. Serv. Co., 343 Mo. 474, 121 S. W. 2d 825. But in that case the doctor ''who was called as a witness by the plaintiff and testified as an expert witness and in giving his testimony *stated that his interpretation of the condition of*

*the plaintiff at the time that he made the examination depended on the history of the case and on his own examination."* He said, "The history as I obtained it indicated to me that this patient had received a spinal concussion at the time of the injury and the history indicated this bladder disturbance had been continuous from that time." The court pointed out that the doctor was testifying **[680]** "on a very technical and close question" concerning complicated injuries, some of which had been sustained in the accident on trial and some of which had been sustained a month previously in an automobile collision. It was held, in these circumstances, that the doctor's testimony was prejudicially erroneous. It is not necessary to detail the testimony of the doctors in this case. They did examine Mr. Cruce for the purpose of testifying in his case and they did relate certain "subjective" symptoms. They did say that they "took a history" but they did not detail the facts of it or base their opinions upon it. There was no occasion for the orthopedic surgeon to do so and the neurological opinion was plainly stated to be based upon the doctor's examination and findings. "He did, however, tell what the respondent told him about his then present condition. * * * A physician may testify as to present symptons or complaints of a patient and of his observations from his examination of the patient, and in giving his opinion he may testify not only as to what he observed but also as to what the patient told him about present symptons. He may not give in evidence statements of the patient with respect to his past physical condition, circumstances surrounding the injury, or the manner in which the injury was received." Evans v. Missouri Pacific R. Co., 342 Mo. 420, 427, 116 S. W. 2d 8, 11. The testimony of the doctors in this case falls within the latter category and the trial court did not prejudicially err in admitting it. Oesterle v. Kroger Grocery & Baking Co., 346 Mo. 321, 141 S. W. 2d 780; Howell v. Kroger Grocery & Baking Co., (Mo. App.) 178 S. W. 2d 101.

██ Against the appellant's contention that the $40,000.00 judgment, after the remittitur, is excessive the respondent urges, first, that the question is not reviewable because there was no such assignment in the motion for a new trial. Stokes v. Wabash R. Co., 355 Mo. 602, 197 S. W. 2d 304. There is, of course, as was pointed out in the Stokes case, a vast difference in an assignment in a motion for a new trial that "the verdict is excessive" and one that "the verdict is so grossly excessive (or inadequate) at to indicate that it was the result of bias and prejudice." Reeves v. Thompson, 357 Mo. 847, 211 S. W. 2d 23. But the verdict of a jury which the trial court permits to stand, as corrected by remittitur, "presupposes a verdict resultant of the jury's unbiased, dispassionate and impartial consideration of the evidence" (Jones v. Pennsylvania R. Co., 353 Mo. 163, 171, 182 S. W. 2d 157) and an excessive verdict does not in and of itself establish that the verdict was the result of passion and prejudice.

O'Brien v. Louisville & Nashville R. Co., 360 Mo. 229, 227 S. W. 2d 690, 693. In the Stokes case there was no mention of an excessive verdict, the only assignment in the motion was that the verdict should have been set aside because it was "the result of bias and prejudice." In this case there was a separate specification that the verdict was "the result of sympathy for plaintiff and prejudice against the defendant." There was also a separate assignment that "The verdict is so grossly excessive as to indicate misconduct on the part of the jury" and a further charge that "The verdict is so grossly excessive as to indicate that it was influenced by the erroneous admission of improper and incompetent testimony on behalf of plaintiff" and because of improper argument. These are not precise assignments of mere excessiveness but are sufficient to present the question, since mere excessiveness does not necessarily indicate passion and prejudice. Reeves v. Thompson, supra.

Respondent's counsel again argues that this court should re-examine and reconsider its rules with respect to excessive verdicts and remittiturs and that the doctrine of uniformity of awards for comparable injuries should be abandoned. But the whole subject and its history were fully examined in Counts v. Thompson, 359 Mo. 485, 222 S. W. 2d 487 and Smiley v. St. Louis-S. F. Ry. Co., 359 Mo. 474, 222 S. W. 2d 481 and the rule of reasonable uniformity as to the amounts of verdicts has been adopted. Jones v. Pennsylvania R. Co., supra.

[681] In this case, Mr. Cruce was sixty-two years of age when he was injured on the 30th day of May 1946. He was sixty-four when the case was tried the second time and his life expectancy was about twelve and one-half years. He had worked forty years as a section man and section foreman and at the time of his injury was earning $260.00 a month. When admitted to the hospital on May 31, 1946 he had a laceration of the scalp, laceration of the upper left arm, abrasions on his left side and a contusion of the left sternomastoid muscle. In addition he had "a fracture of the shaft of the left femur." In the beginning skeletal traction was attempted, a pin was put through the left leg below the knee in an effort to pull the bone fragments of the femur into position. In June there was an open reduction but it was thought that sufficient callus was forming, the incision was closed and he was again placed in traction and in August was placed in a plaster of Paris hip spica cast. He was discharged from the hospital on November 18, 1946. There was no evidence that he had been seen or examined by a railroad doctor after January 7, 1947 when it was thought that "the fracture of the left leg was progressing satisfactorily toward a solid bony union."

But the X-rays and the plaintiff's uncontradicted evidence show that there was not "a solid bony union." From January 1947 down to the date of the second trial the X-rays reveal "good bone density"

but "there has not been a complete bone union developed at this fracture area." The upper fragment is displaced forward or anteriorly and the lower fragment is displaced posteriorly, there is an over-riding of about an inch. There is a bowing of the leg toward the front, some atrophy and some shortness in the leg, one-half to three-quarters of an inch. He walked on crutches for some time and now uses "a steel brace which was started from his crotch down under his thigh which has a hinge at the knee, and a hinge at the ankle, and the bottom of this brace was then riveted to the sole of his shoe." There was an aggravation of a pre-existing arthritic condition and he says that he has headaches, is nervous and unable to sleep. One witness, testifying as an expert, gave it as his opinion that Mr. Cruce had sustained an injury to his brain and spinal cord.

"In considering this assignment we must keep in mind that the question of the amount of damages is primarily for the jury. In a personal injury case, as here, where appellant seeks such damages as 'will fairly compensate him for his injuries, for pain of body and mind, if any, he has suffered by reason of the negligence of the defendants and for such permanent injuries, pain of body and mind, if any, that plaintiff will suffer with reasonable certainty in the future,' there is no definite standard by which the damages may be ascertained. The jury's discretion is conclusive on appeal unless the verdict is so grossly inadequate or excessive as to show that the discretion granted has been arbitrarily exercised and abused. Marlow v. Nafziger Baking Co., 333 Mo. 790, 63 S. W. 2d 115, 121; Mooney v. Terminal R. Ass'n. of St. Louis, 353 Mo. 1080, 186 S. W. 2d 450, 455. Accordingly, an appellate court should not disturb the finding of the jury on the amount of damages unless it is apparent from the record that the verdict is in fact grossly excessive or grossly inadequate. Plater v. Kansas City, 334 Mo. 842, 68 S. W. 2d 800, 804; Crockett v. City of Mexico, 336 Mo. 145, 77 S. W. 2d 464, 469. If the verdict is so shockingly inadequate as to indicate that it resulted from passion and prejudice it should be set aside. Grosdky v. Consolidated Bag Co., 324 Mo. 1067, 26 S. W. 2d 618, 623; Coghlan v. Trumbo, Mo. Sup., 179 S. W. 2d 705. In determining whether the verdict is grossly inadequate we must consider the evidence favorable to the verdict returned, because it was the peculiar and sole province of the jury on the trial, and the trial judge on the motion for a new trial, to pass upon the weight of the evidence and the credibility of the witnesses. Holzemer v. Metropolitan St. Ry. Co., 261 Mo. 379, 411, 169 S. W. 102; Coghlan v. Trumbo, supra. In this case the verdict has been approved by the trial [682] court and, if there was substantial evidence to support the amount of the verdict as returned by the jury, it should not be disturbed by this court. Cochran v. Wilson, 287 Mo. 210, 299 S. W. 1050, 1056." Wilhelm v. Kansas City Public Service Co., 358 Mo. 6, 212 S. W. 2d 915, l. c. 918.

See also Dodd v. Missouri-Kansas-Texas R. Co., 354 Mo. 1205, 193 S. W. 2d 905; Belding v. St. Louis Public Service Co., 358 Mo. 491. 215 S. W. 2d 506; Eller v. Crowell, Mo. Sup., 238 S. W. 2d 310; Silsby v. Hinchey (Mo. App.) 107 S. W. 2d 812.

As previously stated, the trial court ordered a remittitur of $12,500.00. We think the trial court did not abuse his discretion in not ordering a larger remittitur, since there is substantial evidence to support a judgment of $40,000.00. Counts v. Thompson, 359 Mo. 485, 222 S. W. 2d 487. The trial court saw and heard the witnesses; he observed Mr. Cruce in the court room and could see the extent of his injuries; he was in a far better position to pass on the question of the excessiveness of the verdict than we are from the cold record. Moreover, by ordering a remittitur the record affirmatively shows that the trial court did exercise his discretion in passing on the question of the excessiveness of the verdict.

There is evidence that Mr. Cruce will never be able to perform manual labor again. Practically his whole life was spent as a railroad section worker. The jury could rightfully draw the inference he could perform no other work except manual labor. The record shows that four years after the accident there has not as yet been a union of the fractured shaft of the left femur. This alone would cause more suffering and pain than the amputation of the leg. Moreover, the evidence shows that he has had several operations on this leg. We must give more than lip service to the diminishing purchasing power of our dollar. We should take notice of its great decrease in value even within the last few months. We think there is no merit to appellant's contention that the judgment is still excessive. Tatum v. Gulf, Mobile & Ohio R. Co., 359 Mo. 709, 223 S. W. 2d 418.

It follows that the judgment of the trial court should be affirmed. It is so ordered. All concur.