**Vicki CLARK, Pro-Ami, Respondent,**

v.

**Harry PORTMAN, Appellant.**

**No. 23465.**

Kansas City Court of Appeals.

Missouri.

April 2, 1962.

Watson, Ess, Marshall & Enggas, Darrell L. Havener, Robert B. Olsen, Clayton Rhoads Smalley, Kansas City, for appellant.

Michael F. Mahoney, James W. Humphrey, Jr., George T. O'Laughlin, Kuraner, Freeman, Kuraner, Oberlander & Lamkin, Kansas City, for respondent.

BROADDUS, Judge.

This is an action for damages for personal injuries. Plaintiff recovered a verdict in the sum of $10,000 and defendant has appealed.

Inasmuch as defendant does not contend that plaintiff did not make a submissible case there is no need to set forth the evidence in detail. The accident out of which this action arises occurred the evening of November 5, 1959, after dark, near the intersection of 9th & Central Streets in Kansas City, Missouri. The plaintiff was a passenger in a 1952 Plymouth automobile driven by a Miss McGonigle south on Central after a right turn from 9th Street. The McGonigle car was hit on the left front fender by the right front bumper of the defendant's Cadillac automobile, which was also going south on Central after turning left from 9th Street.

■ Defendant's first contention is that Instruction No. 1 given at plaintiff's request is erroneous for the reason that it failed to hypothesize facts which required a finding that the accident occurred according to plaintiff's theory and evidence. The instruction reads as follows:

"The Court instructs the jury that if you find and believe from the credible evidence that on November 5, 1959, plaintiff was riding as a passenger in a

1952 Plymouth automobile being driven by Miss Ann McGonigle and that plaintiff was at all times exercising ordinary care for her own safety, if so, and that the said Plymouth automobile made a right turn from 9th Street to go south on Central Street, and that the defendant turned his Cadillac automobile to the left from 9th Street to go south on Central and that there-after the said Cadillac collided with the side of the left front fender of said Plymouth and that as a direct result of said collision plaintiff was injured and that prior to said collision the defendant negligently failed to exercise the highest degree of care to keep a careful and continuous lookout for vehicles in motion at and near 9th and Central and in particular the automobile in which plaintiff was riding, and defendant was thereby negligent, if you so find, and that as a direct result of such failure said collision occurred, then, if you so find, your verdict, must be in favor of plaintiff on plaintiff's petition."

In no respect does the instruction violate the rule set forth in Hooper v. Conrad, 364 Mo. 176, 260 S.W.2d 496, the case chiefly relied upon by defendant. The instruction hypothesized the "essential facts" as suggested by Judge Hyde in the concurring opinion in that case.

In the recent case of Asher v. Griffin, 342 S.W.2d 255, 259, the St. Louis Court of Appeals refers to the Hooper case and its predecessors, Yates v. Manchester, 358 Mo. 894, 217 S.W.2d 541, Knight v. Richey, 363 Mo. 293, 250 S.W.2d 972 and Kick v. Franklin, 342 Mo. 715, 117 S.W. 284, and says: "The above cases are not to be construed as requiring a submission of evidentiary facts not *necessary* or *essential* to a finding upon the issue or issues specifically submitted." (Emphasis ours.)

■ There is no contention by defendant that the instruction was not supported by the evidence. Defendant's position is,

on the contrary, that there was more evidence as to the happening of the accident than appeared in the instruction. A party is entitled to submit instructions based upon evidence which favors his theory of the case, notwithstanding such evidence may conflict with evidence offered by the opposing party. Highfill v. Brown, 340 S.W.2d 656, 661 (Mo.Sup.).

■ Defendant asks "When 'prior to said collision' did he fail to maintain a propor lookout?" Our Supreme Court announced long ago that "it ought, therefore, be sufficient to authorize a verdict if a jury finds that a party was negligent in failing to keep a proper lookout and that such negligence resulted in a collision or damage." Nelson v. Evans, 338 Mo. 991, 93 S.W.2d 691, 693. There can be no doubt that the duty of the defendant was to keep a careful, continuing and vigilant lookout. Therefore the requirement of the finding of causation supplies the "when" for defendant's failure to keep a continuing lookout. McCarty v. Sebben, 331 S.W.2d 601, 603 (Mo.Sup.). We find no prejudicial error in the instruction.

Defendant next contends that the court erred in permitting plaintiff's witness, Dr. Jacobs, to state his diagnosis and give his opinion of plaintiff's condition for the reason that his diagnosis and opinion were not based solely upon her present complaints but upon her past medical history

■ An examination of the transcript reveals that Dr. Jacobs repeatedly stated on both direct and cross-examination that it was not necessary to have plaintiff's past history to diagnose a post-traumatic neurosis or to form his opinion that plaintiff has permanent brain damage. At no place in his testimony did the doctor testify to, or recite the patient's account of her past history. The only complaints related by the doctor as made to him were plaintiff's complaints of her then present and existing physical sensations and mental and emotional upsets. While it is true that a doctor may neither recite the patient's past his-

tory nor testify as to a diagnosis based on such, it is equally true that a doctor may testify to a diagnosis made, or which could have been made without regard to past history. Cruce v. Mobile and Ohio R. Co., 361 Mo. 1138, 1148, 238 S.W.2d 674, 679, 680. The contention lacks merit.

Defendant's third contention is that the court erred in admitting plaintiff's evidence respecting medical expenses not paid by her, for the reason that plaintiff was an unemancipated minor and plaintiff's next friend, her mother, alone had the cause of action for such expenses.

Defendant in his brief states that he "makes no objections to the admission of testimony by plaintiff and physicians treating her as to the portions of the fees for such treatment which the plaintiff herself has paid out of her own funds." Defendant did not object to Dr. Feierabend's or Dr. Jacobs' statement of the future cost of medical aid or to Dr. Jacobs' statement of the cost of his treatment to the time of trial. The only expenses about which the defendant is complaining then are $73 owed to Dr. Huffman, $125 owed to Dr. Reister and $75 owed to Dr. Feierabend. Plaintiff paid $100 to Dr. Huffman and $75 to Dr. Reister.

█ In any event the error, if any, was harmless since in the instruction on the measure of damages the jury was not asked to award plaintiff damages for medical care and expenses.

In the case of Dent v. Springfield Traction Co., 145 Mo.App. 61, 69, 70, 129 S.W. 1044, 1047, the plaintiff pleaded that she had paid $250 for medical attention. She proved that she had only *incurred* liability for medical expenses in the amount of $250. The Court held that there was no error in admitting evidence of the medical expenses incurred, saying, the trial court: " * * * in giving instructions for the plaintiff, limited the recovery of damages to such sum as would reasonably compensate plaintiff for her pain and suffering, and gave no direc-

tion to the jury that they should allow any sum whatever for medicines and medical attention * * *. Under the instructions actually given to the jury, the improper admission of evidence as to medicines and medical services * * * was harmless error, not materially affecting the merits of the case."

In the case of Bolles v. Kansas City Southern Ry., 163 Mo.App. 697, 699, 147 S.W. 497, 498, the plaintiff in a personal injury action introduced evidence that he was a house painter by trade and earned $4.00 a day. This Court in deciding that the admission of such evidence did not require a reversal said: "If this was error, as claimed, it was rendered harmless by the instruction on the measure of damages, which did not include such loss of earnings."

█ Defendant's final assignment is that the verdict is excessive. This calls for a review of the medical testimony and other evidence bearing on the nature and extent of plaintiff's injuries. In determining this issue we must consider the evidence and inferences favorable to the verdict and disregard conflicting testimony. Henderson v. Dolas, 217 S.W.2d 554, 557 (Mo.Sup.).

As a result of the impact, the right side of plaintiff's head, shoulder and arm struck the right side of the car. The same evening following the accident she experienced an extreme burning headache, a ringing in her right ear, pain in her neck, right shoulder and arm and the back of her head was tender and sore. She was not able to sleep very much that evening, and the next day at work she had headaches, pain in her neck, and right shoulder, her eyes were blurry and she couldn't concentrate.

Plaintiff has had this burning type of headache in the back of her head about every day since this automobile collision. For two or three weeks after the accident she experienced a constant ringing in her right ear; this same ringing sensation is

still frequently present. She is still experiencing extreme pain in the back of her neck.

Two days following the accident she visited an osteopathic physician, Dr. Huffman, whose offices were located near her place of employment. At the time of her visit to Dr. Huffman, she complained of burning and watering of her eyes, continuous headaches with a roaring sensation in her head, a sensation of pressure in the back of her eyes, soreness and stiffness of her neck, which was aggravated when she turned it to the right, and pain and soreness in the upper part of her back. Upon physical examination of the plaintiff, Dr. Huffman found tenderness to the neck on palpation, more pronounced on the right side, tenderness in the muscles in the back of the neck, particularly on the right side and extending down into the muscles of the right shoulder, sub-occipital tenderness where the head and neck join bilaterally, pain and restricted motion of her head and neck.

The plaintiff was treated by Dr. Huffman 14 times at his office, and these treatments consisted of motorized traction and ultrasonic therapy. Up to 30 pounds of this traction was applied to plaintiff's head and neck. The diagnosis of Dr. Huffman was that of a rather severe cervical strain and sprain with a reflex stimulation of the inner ear.

In January, 1960, plaintiff was examined by Dr. F. L. Feierabend. At that time, plaintiff complained of pain in the neck which radiated up to the back of her head and then around to the frontal area and down between the shoulder blades in the back, and to the right forearm. After examination he asked the patient to exercise her neck and head and return for additional observation.

On October 19, 1960, Dr. Feierabend re-examined the plaintiff. She was complaining of pain in the neck and pain in the back of her head. Upon examination. Dr. Feierabend found some crepitus over the lower spinous process. There was a popping sensation there when she moved. He found definite tenderness between the shoulder blades in the back. A cortisone injection was recommended for the crepitus.

Dr. Feierabend saw the plaintiff a few times after October 19, 1960, and stated he intended to hospitalize her for head traction and medication to relieve her pain and apprehension and the spastic condition of the muscles in her neck.

On April 6, 1960, Dr. Phillip Reister examined the plaintiff. She complained of neck pains, ringing in the ears, vertigo, dizziness, headaches, peculiar sensation or paresthesia of the arms, nervousness and low backache. On examination of the plaintiff's neck, the doctor found 50% limitation of motion to the right and subjective crepitus or grating. Later, on October 14, 1960, the crepitus was such that Dr. Reister heard it "halfway across the room." Dr. Graham, Dr. Reister's partner, who examined plaintiff on March 21, 1960, gave plaintiff ultra sound and muscle stimulator treatment. He prescribed a muscle relaxant and a "small quantity of dessicated thyroid." Dr. Reister prescribed a muscle relaxant and analgesic to relieve pain, light sedatives for her nerves and cortisone injections for the crepitus. To weeks after his first examination plaintiff saw Dr. Reister again. She still had aching, stiffness, soreness and limitation of motion in her neck. She complained of occipital and frontal headaches accompanying the neck pains. A cervical collar was prescribed and fitted on the plaintiff which she wore for about 10 months.

The doctor saw her for the last time on January 14, 1961, and found her jittery, nervous and complaining of head and neck aches. Dr. Reister's diagnosis was cervical sprain, lumbar sprain and anxiety reaction. Dr. Reister recommended surgery for remedy of the crepitus in plaintiff's neck. He referred her to Dr. Jacobs, neuropsychiatrist for consultation.

Dr. Jacobs saw the plaintiff at the request of Dr. Reister on January 13, 1961. The plaintiff was complaining of cracking and grinding in her neck, sore muscles in the back of her head, headaches, ringing in her ears and a burning feeling in her head. She stated that she was nervous and upset, didn't seem to be herself and that everything bothered her; she was worried about the accident and about her neck. She further complained that she was worried about her job, that she couldn't sleep at night, that she had nightmares about the accident, that she easily flew off of the handle and got into arguments, that she couldn't figure out her own problems, that she was smoking too much and drinking too much coffee, that she couldn't cope with people, that she cried easily, that she was afraid of the dark and that she was forgetful.

Based upon his "examination, neurological and psychiatric examination" Dr. Jacobs' diagnosis of plaintiff's condition was organic brain injury, post concussion, syndrome and post traumatic neurosis. The doctor stated that plaintiff was in need of intensive and probably prolonged treatment. The brain damage, at least, is a permanent injury.

Prior to the accident plaintiff was a normal, healthy girl who has always been content, easy-going, anything but a nervous person, who danced and whose main hobby was roller skating.

In determining whether a verdict for personal injuries is excessive each case must be decided on its own peculiar facts. As stated in the case of Breland v. Gulf, Mobile and Ohio Railroad Company, 325 S.W.2d 9, 16, Mo.Sup.: "An appellate court should not interfere with the action of a jury in this respect unless the injustice of the size of the verdict is manifest. * * * Consideration must be given to the purchasing power of money, and we must bear in mind the inroads inflation had made on the bargaining power of the dollar at the time of the rendition of this verdict (Jan-

uary, 1958). The failure of the trial judge to set aside the verdict as excessive is significant." We are inclined to follow, and not interfere with, the conclusion of the jury and the trial court in the instant case.

The judgment is affirmed. All concur.