Mary C. CREECH, Appellant,

v.

Preston BLACKWELL, Respondent.

No. 46646.

Supreme Court of Missouri,

Division No. 1.

Dec. 8, 1958.

B. Richards· Creech, H. K. Stumberg, St. Charles, for (plaintiff) appellant.

Ely & Hibbard, Hannibal, for respondent.

HOLLINGSWORTH, Judge.

In this action plaintiff (appellant), Mrs. Mary C. Creech, sought damages in the sum of $50,000 from defendant (respondent), Preston Blackwell, for personal injuries sustained when an automobile driven by defendant struck an automobile driven by plaintiff's husband, in which plaintiff was riding as a passenger, at an intersection of U. S. Highway 61 and Missouri Highway 47 adjacent to the city limits of Troy, Missouri. The case has been twice tried, each trial resulting in a verdict and judgment in favor of defendant.

At the first trial plaintiff sought submission of her right to recover both on the ground of defendant's primary and humanitarian negligence. The trial court refused to submit her proffered· instruction predicated upon primary negligence but did submit defendant's · humanitarian negligence. On appeal from the judgment rendered

against her in the first trial, plaintiff contended that the trial court erred in (1) failing to direct a verdict, or thereafter to set aside the verdict and enter judgment for plaintiff, and (2) in the giving and refusal of certain instructions. See Creech v. Blackwell, Mo.Sup., 298 S.W. 2d 394. After reviewing the evidence relating to contributory negligence on the part of plaintiff, the evidence relating to submissibility of plaintiff's case under the humanitarian doctrine and the submissibility of her case on alleged primary negligence of defendant, we held:

. (1) The evidence was clearly sufficient to make a jury issue of plaintiff's contributory negligence;

(2) The evidence and the reasonable inferences therefrom made a jury issue of defendant's humanitarian negligence;

(3) The evidence made a jury issue of defendant's primary negligence, as hypothesized in plaintiff's proffered (and by the trial court refused) Instruction No. 4.

The judgment was reversed and the cause remanded for a new trial.

On this appeal, plaintiff again contends that the trial court erred (1) in refusing her motions for a directed verdict and to set aside the judgment rendered thereon, and (2) in giving defendant's Instructions A, B, and C.

The physical facts are not in dispute and mere reference to them, as stated in the former opinion, might well suffice, but, in the interest of a more ready understanding of the conclusions herein reached, we again set them forth, 298 S.W.2d 394, 396–397:

"The collision occurred in the intersection of U. S. Highway 61 and Missouri Highway 47 just east of the city limits of Troy. The automobile in which plaintiff was riding (hereinafter sometimes referred to as the Creech car) was proceeding from west to east on 47 across 61 and defendant's automobile northwardly on 61. Highway 61, a concrete road, was 20 feet wide south and north of the intersection, but at a place 280 feet south of the center of the intersection it began to widen and from 210 feet south was 40 feet in width. Highway 47 west of 61 was about a 20-foot wide, concrete road and widened as it approached 61's west edge, with a concrete 'apron' at its south edge for use of traffic turning south onto 61. There was a stop sign (existing by authorization of a Troy city ordinance)· for eastbound 47 traffic located on the south side of 47 and 45 feet west of the west edge of 61. Both highways were essentially level and straight at the intersection. While 61 descended to the intersection 65.9 feet in the distance from a point 1,800 feet south, the last 400 feet of such descent was gradual so that Highway 61 was generally level for at least 400 or 500 feet as one approached 47 from the south. There were 11 poles on the east side of 61 as it approached and passed 47 on which were lights which went on automatically when it was sufficiently dark. The lights of both automobiles were on at the time of the collision. There was a suspended center light over the center of Highway 61 and 10 feet north of the center of 47, which continuously blinked red for traffic on 47 and continuously blinked amber for traffic on 61.

"The intersection was 'open' in that a driver of a car traveling east on 47 could see south on 61 for at least 600 feet from a distance 45 feet west of 61 and continuously to the intersection. Likewise, the driver of a car traveling north on 61 could see the intersection and at least 45 feet to the west thereof from a place at least 1,600 feet south of 47 and continuously to the intersection. The front of defendant's automobile struck the right front door of the Creech car at some place in the intersection's southeast quadrant. The Creech car came to rest against a light

pole 130 feet north of the center of the intersection and down an embankment to the east. Defendant's car came to rest with its front off the north half of Highway 47, 20 or 30 feet east of 61."

Appellant, in her reply brief, insists that her testimony at the second trial differs from her testimony at the first trial. Although we find no material difference, we shall summarize her testimony and the testimony of her husband at the second trial, as we glean it from the transcript. She testified: She was 72 years of age on the date she was injured, November 9, 1953, and had never driven an automobile. About 5:00 p. m., on that date, she rode with her husband, Brevator J. Creech, in the front seat of his automobile, as they undertook a trip from their home in Troy to Old Monroe. It was then dusk. They proceeded eastward on Highway 47, within the city limits of Troy, until they reached Highway 61. They there stopped and looked both ways to be sure the intersection was clear. An automobile immediately to their right, headed eastward on Highway 47, was stopped. Plaintiff looked and did not see any cars on Highway 61. After waiting, she and her husband thought Highway 61 was clear and they started across it. She remembered nothing "about anything, only just going across that highway". On cross-examination, she further testified: Mr. Creech drove as near up to Highway 61 "as he was permitted to drive" before he stopped at the intersection. She was familiar with the lights at the intersection and they were on. She looked to the south, could see "up the highway", as "far up as you can see" and saw no oncoming cars, and "everything seemed perfectly safe". After entering upon the highway, Mr. Creech never stopped. She never saw the car that struck their car. Neither did Mr. Creech make any statement or in any way indicate to her that he saw the car which struck them.

Mr. Creech, aged 76 years, testified at the second trial: He is very familiar with the intersection of Highways 47 and 61, the lights in that area and the stop sign. He stopped at the stop sign "as much as two or three minutes waiting for the intersection to clear", looked to his right and saw no oncoming cars. While waiting at the intersection, several cars headed eastward passed alongside his car and turned south into Highway 61. After stopping and seeing no car approaching the intersection from the south, he drove eastward into the intersection, going not faster than 7 or 8 miles an hour. When he had gotten nearly through the intersection, he was struck by defendant's northbound car, which he neither saw nor heard. As he drove across the intersection, he could have stopped his car within 2 or 3 feet.

Plaintiff also stresses for our reconsideration the testimony of defendant. Although we see no material difference in it from that narrated in our first opinion, we, nevertheless, again state it as we glean it from the record. Defendant, aged 31 years, testified on direct examination: He had driven across the intersection many times and was thoroughly familiar with it. On the date of the collision he drove his automobile northward on Highway 61 to and into the intersection and struck the right side of the eastbound Creech car as it was crossing the southeast quadrant. As he approached and entered the crossing he drove 25 to 30 miles per hour. Approaching the crossing, he saw one automobile on Highway 47. It was stopped at the stop sign west of 61 and south of 47. He knew of the stop sign at that place and took that fact into consideration as he approached and entered the intersection. The car that he saw stopped there came into 61 and went south in the southbound (west) lane. He then saw another car (the Creech car) come out "from behind" the car that had turned south, meaning by the phrase "from behind" that the Creech car was to the north of the car that had turned to the south. When he first saw the Creech car, defendant was, he estimated, 25 to 30 feet away from it. Both his car and the Creech

car had their lights on. Defendant tried to swerve, but did not have time; he "hit his brakes", but did not know whether he actually got them applied. On cross-examination he further testified: As he came over the hill he could see the intersection and the traffic moving there. He slowed at the railroad tracks, 698 feet south of the intersection, to a speed of 25 to 30 miles per hour and continued into the intersection at that speed. He could see the stop sign from the railroad tracks. When he first saw the Creech car it was approaching the center line of the intersection.

Plaintiff also introduced into evidence as admissions against interest certain testimony of defendant given at the first trial, the substance of which, insofar as it is of any materiality, was: There is a good view of the intersection from the railroad tracks. Defendant does not remember when he first saw automobiles at the intersection, but he was "bound to have seen them" when he was 150 feet from the intersection. He assumed they were getting ready to come on to the highway and he kept on driving as he normally would. He did not see the Creech car, as such. The car that turned to the south was the first one he saw. It had stopped and was coming on to the highway when he saw it. The next one he saw was the Creech car. It was then going east and crossing Highway 61, probably entering into it. When he first saw it, it was 30 to 40 feet from him.

Such additional evidence as is necessary to determination of any of plaintiff's assignments will be hereinafter set forth.

At the second trial, plaintiff abandoned the issue of humanitarian negligence by electing to submit her case (under Instruction 1–M) predicated solely upon primary negligence on the part of defendant in substantially the form set forth in Instruction No. 4, referred to above, and which we held in the first opinion the trial court had erroneously refused. Defendant concedes that the evidence warranted submission of that issue. In behalf of defendant, the trial court by Instruction A submitted an issue of plaintiff's contributory negligence, by Instruction B an issue of defendant's non-negligence in entering the crossing and striking the car in which plaintiff was riding, and by Instruction C an issue of Mr. Creech's negligence as the sole cause of the collision.

By reference to our opinion on the former appeal, it will be seen that plaintiff's testimony at the second trial was substantially the same as her testimony at the first trial. Inasmuch as we there held that her testimony "was clearly sufficient to make a jury issue on [her] contributory negligence", such ruling became and was the law of the case on that issue. Wilson v. Toliver, Mo.Sup., 305 S.W.2d 423, 428. The trial court did not err in refusing to direct a verdict for plaintiff and in denying plaintiff's motion to set the verdict aside and render judgment for plaintiff.

Plaintiff next makes a series of attacks upon defendant's given Instruction B. Said instruction reads as follows:

"The Court instructs the jury that if you find and believe from the evidence that at the time of and for a long time before the accident described in evidence, there was a stop sign on the south side of Highway 47 immediately west of its intersection with Highway 61 and that such stop sign, if any, had been erected by the City of Troy, Missouri, under authority of an ordinance of said city and was erected within the corporate limits of said city and that said ordinance, if any, required vehicles traveling east on said Highway 47 to come to a stop before entering the intersection of said Highway 47 with Highway 61;

"And if you further find that at the time of and before the motor vehicle collision described in evidence the Defendant Blackwell knew of the existence of said stop sign;

"And if you further find that at the time the Defendant Blackwell was driving his automobile toward the said intersection on the occasion described in evidence and immediately before he entered the same, he was operating his automobile at a rate of speed which was not greater than the speed which would have been used by a very careful and prudent driver having due regard to the presence of said stop sign, the condition of traffic then upon the road, and all of the other circumstances then present as disclosed by the evidence;

"And if you further find that the Defendant Blackwell was keeping a lookout ahead and laterally for traffic upon said Highway 47 and for traffic approaching said Highway 61 on said Highway 47 in the manner in which a very careful and prudent driver would keep such lookout;

"And if you further find that said Defendant Blackwell did not see and by the exercise of the highest degree of care could not see the automobile driven by Mr. Creech and in which the Plaintiff was a passenger until said last mentioned automobile was actually entering the intersection, if such be the fact;

"And if you further find that prior to that time Defendant Blackwell did not know and could not in the exercise of the highest degree of care have discovered that the said Creech automobile was about to enter the intersection ahead of him;

"And if you further find that at the time said Creech automobile did enter the said intersection the automobile driven by Blackwell had not yet entered the same, but that Blackwell was so near to said intersection that he could not thereafter by the use of the highest degree of care and having regard to the speed at which his automobile was traveling have stopped or slowed the same or changed the course thereof in time to have avoided colliding with the Creech automobile and that in entering the said intersection thereafter Blackwell was not guilty of negligence as defined in these instructions;

"And if you find all of the above mentioned things to have been established by the greater weight of evidence in this case, then, in that event, your verdict will be for the Defendant Blackwell."

■ In a portion of her brief, designated as "assignment of errors", plaintiff attacks each of the eight paragraphs of Instruction B. The general tenor of these complaints is in the nature of conclusions to the effect that the instruction (1) presents "no proper legal factual issue to the jury and was calculated to distract the jury's attention from plaintiff's [submission instruction] and center [its] attention on the stop sign ordinance * * *"; (2) requires "a finding contrary to the law of the case of Creech v. Blackwell"; (3) erroneously presents "a defense issue of speed, and observance of the stop sign which is contrary to the law and not based upon any evidence to support a finding of the jury that he was absolved of his duty not to enter the intersection * * * and not strike any vehicle that might lawfully be" in it; (4) does not hypothesize any factual issue warranting a finding that defendant approached the crossing with knowledge that plaintiff's car had pre-empted it; (5) is a comment on the evidence and diametrically opposed to plaintiff's Instruction 1–M (her submission instruction); et cetera, et cetera. The bald conclusions set forth in the so-called "assignment of errors" are not thereafter developed and it is extremely difficult to follow the meaning of some of them. We are convinced, however, that the instruction has none of the faults attributed to it. The generality of its terms is amply justified as is made clear by an analysis of the issues set forth in our former opinion, 298 S.W.2d loc. cit. 401: "Neither plaintiff nor her husband driver

ever saw defendant's car until the instant of impact. And there was no testimony by any of plaintiff's witnesses which was contrary to defendant's testimony as to his approach to the intersection. Consequently there were not 'two or more divergent sets of essential facts, under one or more of which plaintiff would be entitled to recover and under one or more of which he would not.' Hooper v. Conrad, 364 Mo. 176, 188, 260 S.W.2d 496, 500 [2]. On the contrary there was only one set of circumstances, i. e., the testimony of defendant, for the jury to consider in finding that defendant either did or did not *negligently* drive into the intersection and into collision with the Creech car after the Creech car had entered the intersection."

The contentions above made by plaintiff with reference to Instruction B are without merit and are overruled.

Plaintiff next makes a series of five objections to defendant's Instruction A. That instruction, submitting the issue of plaintiff's contributory negligence, reads:

"The Court further instructs you that even if you find after considering the evidence that the Creech automobile in which the Plaintiff was riding entered the highway intersection described in evidence before the Blackwell automobile entered it, and even if you find that the Defendant Blackwell thereafter entered said intersection and was negligent in so doing and that such negligence of Defendant Blackwell, if any, was the cause or one of the causes of the collision, yet if you also find that at the time of the accident and for a long time prior thereto there was a stop sign on the south side of Highway 47 immediately west of the intersection of said Highway 47 and Highway 61 and that such stop sign, if any, had been erected by the City of Troy, Missouri, under authority of an ordinance of said city, and that said ordinance, if any, required vehicles traveling east on Highway 47 to come to a stop before entering said intersection and that the automobile in which Plaintiff was riding did come to such stop but that thereafter said automobile was driven forward into said intersection at a time when the automobile of Defendant Blackwell was approaching the intersection from the south and was so close thereto as to constitute a hazard, and that when the Creech automobile started forward from said stop sign the Plaintiff by the exercise of ordinary care could have seen the Blackwell car so approaching the intersection and could have seen that the Blackwell car was so close thereto as to constitute a hazard, if such be the fact, and if you find that it would have been manifest to the Plaintiff in the exercise of ordinary care that for the automobile in which she was riding to proceed into the intersection would involve an unreasonable risk of accident and if you find that Plaintiff in the exercise of ordinary care could have and should have warned her husband of the approach of the Blackwell automobile but that she did not so warn him, and if you find that her failure, if such be the fact, to so warn her husband in any manner caused or contributed to cause the accident, then you will find that the Plaintiff was contributorily negligent and in such event you should find your verdict for the Defendant."

Plaintiff's first contention with reference to Instruction A is that it embodied references to an ordinance of the city of Troy and required the jury to make numerous findings with respect to its provisions "without a construction of such ordinance by the court as the law required * * *". Coupled with that contention is plaintiff's further contention that it was error to admit the ordinance in evidence because it was "immaterial and irrelevant to the issues" and prejudicial to plaintiff. The latter assignment is in violation of S.Ct. Rule 1.08, 42 V.A.M.S. However,

we note from the argument in plaintiff's brief her assertion that our opinion on the first appeal held that the ordinance was not applicable because the intersection was not within the corporate limits of the city of Troy. Actually, that opinion, while noting that the intersection was immediately east of the east corporate limits of the city, nevertheless assumed the ordinance was a relevant factor in determination of the issues by holding that the stop sign at the intersection was "a form of traffic control". As will hereinafter be seen, that holding clearly makes applicable the provisions of Section 304.021, subd. 4 RSMo 1949, V.A.M.S., relating to intersections at through highways, to wit: "The driver of any vehicle shall stop as required by this section at the entrance to a through highway and shall yield the right of way to other vehicles which have entered the intersection on the through highway or which are approaching so closely on the through highway as to constitute an immediate hazard. * * *" Despite plaintiff's failure to comply with Rule 1.08, we will first review the contention made by plaintiff that the ordinance was "immaterial and irrelevant to the issues" before discussion of the alleged error of the court in failing to construe it.

The evidence shows that the eastern limits of the city begin some distance north of Highway 47 and extend southward along the west line of Highway 61 to the south line of Highway 47, thence east along the south line of 47 across 61 for a distance of 300–400 feet, thence south "back up the hill", thereby incorporating into the city limits a long portion of Highway 61 immediately south of the intersection. Thus the south and west lines of the intersection abut upon the city limits. Sections 7–a, 9, 11 and 12 of Ordinance 34, read into evidence, are as follows:

(7–a) "By this Act, U. S. Highway 61 between the north and south City Limits is hereby declared a throughway and all traffic operating in the municipality of Troy, Missouri, shall come to a complete stop before operating onto or across said highway."

(9) "No person shall start a vehicle which is stopped, standing or parked unless and until such movement can be made with reasonable safety."

(11) "The driver of a vehicle shall stop as required by ordinance at the entrance to a throughway or at any other intersection when stop signs are erected and shall yield the right-of-way to other vehicles which have entered the intersection from said throughway or major artery as to constitute an immediate hazard, but such driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on said throughway or major artery shall yield the right-of-way to the vehicles so proceeding into or across through said throughway or major artery."

(12) "Drivers shall likewise stop in obedience to stop signs legally placed at an intersection where stop signs or markings are placed at one or more entrances thereto, although not part of a throughway, and shall proceed cautiously, yielding to vehicles approaching so closely as to constitute an immediate hazard, but may then proceed."

There can be no doubt that the provisions of these sections were pertinent to and regulative of the method of operation of eastbound motor vehicles approaching and entering upon the intersection from Highway 47 and northbound vehicles approaching and entering upon it from Highway 61. It would be absurd to hold that the provisions of an ordinance which governed the reciprocal rights and duties of the operators of the motor vehicles involved in this case as they approached and entered the intersection thereupon instantly terminated when neither operator nor plaintiff could have changed the existing situation, and that other and different rights and duties attached.

Neither of defendant's instructions embodying a reference to the ordinance does more than hypothesize the pertinent provisions thereof as an evidentiary fact to be considered with other facts and circumstances in evidence in determination of the duties and rights of plaintiff and Mr. Creech and defendant as the respective automobiles approached and entered the intersection. Obviously, the provisions of the ordinance have a bearing upon and are evidentiary factors in determination of the issue of whether the driver of either or both of the cars exercised the highest degree of care and whether plaintiff exercised ordinary care under the facts hypothesized in defendant's Instructions A, B and C as the cars approached and entered the intersection. The ordinance was material and relevant to the issues submitted in behalf of defendant.

 Section 12 thereof placed upon the driver of the Creech car the duty to stop and thereafter to proceed cautiously, "yielding to vehicles approaching so closely as to constitute an immediate hazard * * *." That provision is free from ambiguity and the trial court could have done no more in the way of construing it than declare its terms to the jury. In effect, the court did that very thing in hypothesizing a finding that the ordinance "required vehicles traveling east on Highway 47 to come to a stop before entering said intersection" and that, after stopping, the Creech car "was driven forward into said intersection at a time when the automobile of defendant Blackwell was approaching the intersection from the south and was so close thereto as to constitute a hazard", etc. The fact that the court *permitted the jury* to find as a fact that the ordinance so declared rather than directing the jury that it so declared was favorable to plaintiff and could not have been prejudicial to her. The contention is denied.

 The next contention is that Instruction A "erroneously places upon the plaintiff a higher duty than that of B. J.

Creech, the driver of the motor vehicle, in which plaintiff was riding. That of exercising the highest degree of care and that of knowing what she could have seen and known, and that of warning her husband before any danger became known to her." The instruction must be considered in the light of the evidence. The evidence shows that plaintiff did not rely solely upon her husband to determine whether they could safely enter the intersection. She also undertook to determine whether they could do so. She looked to see if the intersection was clear. She looked to the south and could see "as far up as you can see." She saw no oncoming car and "everything seemed perfectly safe." All of the evidence indisputably showed that defendant's car was within the range of plaintiff's vision and that she *could* have seen it. (The instruction, unlike the instruction condemned in Toburen v. Carter, Mo.Sup., 273 S.W. 2d 161, 165, did not place upon her the absolute duty of seeing defendant's car. Rather it placed upon her the duty only of exercising ordinary care to see that which, upon looking to see, unquestionably she could have seen.) Under the evidence and plaintiff's own testimony the question of whether she was in the exercise of ordinary care in failing to see defendant's car became, and by the instruction was expressly made, a jury issue. Neither did the instruction require plaintiff to warn her husband "before any danger became known to her." To the contrary, it limited her duty to warn to the time when, in the exercise of ordinary care, the danger would have been manifest to her and in the exercise of ordinary care she could and should have warned him. Appellant's contentions above discussed are denied.

The next contention is that Instruction A was erroneous in declaring that plaintiff's failure to warn Mr. Creech, if the jury so found, "in any manner caused or contributed to cause the accident, then you will find that the plaintiff was contributorily negligent * * *", etc. Plaintiff says that contributory negligence to bar a plain-

tiff must have constituted some part of the whole negligence which was the efficient or proximate cause of her injuries, and that the phrase "in any manner caused or con- tributed to cause" the accident erroneously enlarged the field of plaintiff's alleged and submitted negligence to any cause direct and proximate or indirect and remote. Cited in support thereof is Perkins v. Kansas City Southern R. Co., 329 Mo. 1190, 49 S.W.2d 103, 107.

■ The general rule, as stated in Perkins and many other cases, is that a contributory negligence instruction must require such negligence not only be a cause but also that it be a direct and proximate cause of the injury, and certainly it is always better for such an instruction to avoid the possibility of a criticism such as is here made. The rule, however, is not applicable where the facts hypothesized are such that the negligence could not be a cause at all unless it be also the legal and proximate cause. In Barr v. Missouri Pac. R. Co., Mo.Sup., 37 S.W.2d 927, 930, this court quoted with approval from Carr v. St. Joseph, Mo.Sup., 225 S.W. 922, 923, as follows: " 'If an instruction on contributory negligence requires the finding of negligent acts which, in the nature of things, necessarily contributed directly to cause the injury and necessarily formed a part of the efficient cause thereof, then the instruction cannot be held erroneous because it does not require the jury to draw the inference which the law itself draws therefrom.' " There is no magic in the words "proximately" or "directly". Their function is to exclude remote and non-causative negligence. If the instruction excludes remote negligence and in fact requires a finding of causal connection between plaintiff's negligence and injury, it is sufficient. Young v. Kansas City Public Service Co., Mo.Sup., 270 S.W.2d 788, 792; Stumpf v. Panhandle Eastern Pipeline Co., 354 Mo. 208, 189 S.W.2d 223, 228. In the instant case, Instruction A necessarily excluded remote negligence by hypothesizing a specific finding of want of ordinary care on the part of plaintiff to see the approach of defendant's car so close as to constitute a hazard, that in the exercize of ordinary care such hazard would have been manifest to her, that in the exercise of ordinary care she could and should have warned her husband and negligently failed to do so, and that her failure to exercise ordinary care in the respect aforesaid "in any manner caused or contributed to cause the accident". We think the instruction adequately hypothesized findings of facts which, when found in any manner to cause or contribute to cause the collision, would of necessity constitute a legal and proximate cause. Young v. Kansas City Public Service Co., supra. The contention is denied.

■ Plaintiff's next contention is that Instruction A is erroneous and misleading in that it "uses the word 'accident' in its common and accepted meaning", citing Long v. Mild, 347 Mo. 1002, 149 S.W.2d 853, 857, wherein it was said of a similar instruction in which the word "accident" was used in the place of the word "collision", "It would be better to use the word 'collision.' " But that case did not hold the instruction there under review to be prejudicially erroneous on that ground. Plaintiff concedes that, as employed in the instruction, the word "accident" was used in its common and accepted meaning, rather than in its legal sense. When considered in context it is obvious that it was intended to refer to the event out of which this action arose, to wit: the collision of defendant's car with the Creech car. We think the jury could not have construed it otherwise. The contention is denied.

■ Plaintiff's next contention is that Instruction A is erroneous in that it "does not contain any requirement of finding by the jury by hypothesis of facts when the duty arose of Mary C. Creech to warn her husband or that he could have accepted said warning and in time thereafter could have avoided the [Creech car] from being struck [in the intersection]." And,

strangely, she cites in support of her contention our former opinion in this case and Hooper v. Conrad, 364 Mo. 176, 188, 260 S.W.2d 496, 500–501, wherein we held: "Where there is no divergence in or denial of the essential facts, then the ultimate issue of the negligence pleaded and its being the proximate cause of the injury or damage alleged may be submitted by reference to the facts and circumstances shown by the evidence without specific hypothesization in the instructions."

In the instant case, there was no divergence in or denial of the essential facts as shown by the testimony. Plaintiff testified as to the range of vision of herself and Mr. Creech as they stopped their car at the stop sign and thereafter went into the intersection, the facts relating to the degree of care exercised by them and the speed of the Creech car as it approached and entered the intersection. That testimony was not controverted by defendant. Defendant testified to his range of vision as he approached and entered the intersection, the facts relating to the degree of care exercised by him and the rate of speed at which he approached and entered the intersection. Plaintiff did not controvert that testimony. The evidence presented but one set of facts by which the issues of negligence were to be determined. It was the jury's province to determine from the facts and circumstances shown in evidence whether plaintiff in the exercise of ordinary care should have seen the imminent hazard of defendant's approaching car in time to have given Mr. Creech timely warning of its approach. Hooper v. Conrad, 364 Mo. 176, 188, 260 S.W.2d 496, 500–501; Creech v. Blackwell, Mo.Sup., 298 S.W.2d 394, 401. The contention is denied.

Plaintiff's next contention is that defendant's sole cause Instruction C is erroneous in that "it ignored plaintiff's theory that the negligence of the defendant relied upon by the plaintiff to recover, was the failure of the defendant in the operation of his automobile to yield right-of-way to the automobile in which the plaintiff was riding as a guest passenger, in the intersection of Highways 47 and 61 before the defendant entered the intersection and defendant's automobile struck plaintiff's automobile in the intersection."

Instruction C, after hypothesizing a finding of pertinent provisions of the ordinance above referred to and a finding of facts as testified to by plaintiff and Mr. Creech as to their approach to and entrance into the intersection and a finding that defendant was then approaching the intersection, further hypothesizes:

"And if you further find that at the time Brevator Creech drove his automobile forward toward and into said intersection, the automobile driven by Defendant Blackwell was so close to said intersection that its approach constituted a hazard and that said Brevator Creech was negligent in so driving into said intersection, if so, then, although the negligence, if any, of said Brevator Creech may not be imputed to the Plaintiff yet if you find that such negligence, if any, of said Brevator Creech was the sole cause of the collision described in evidence and that the defendant Blackwell was not guilty of any negligence whatsoever, then in that event, your verdict must be for the Defendant."

The instruction did not ignore plaintiff's theory upon which her cause was submitted. Quite to the contrary it expressly required a finding that defendant "was not guilty of any negligence whatsoever", which, of course, required a finding that he was not guilty of the negligence hypothesized in plaintiff's main instruction.

The judgment is affirmed.

All concur.