George WILLIAMS, a Minor, by his Father and Next Friend, W. E. Williams, Appellant,

v.

Theodore J. MILLER, Respondent.

No. 46828.

Supreme Court of Missouri, Division No. 2.

March 9, 1959.

Thomas J. Conway, Jr., Kansas City, for appellant.

Paul C. Sprinkle, Roy A. Larson, Jr., Sprinkle, Carter, Sprinkle & Larson, Kansas City, for respondent.

Samuel A. DEW, Special Commissioner.

This action was brought by the plaintiff by his next friend (his father) to recover damages for personal injuries received when he was hit and knocked down by a truck being operated at the time by the defendant. The amount sought by the petition was $30,000. The case was submitted

on both the primary negligence theory and upon the humanitarian doctrine. Verdict and judgment were in defendant's favor and the plaintiff has appealed.

In substance the petition alleged that on May 24, 1948, defendant was operating a motor truck northwesterly on Winner Road, near 16th Street, in Independence, Missouri, when it came in violent contact with the plaintiff, who was attempting to cross Winner Road; the defendant operated said truck at a high, dangerous and excessive rate of speed under the circumstances; that he failed to keep a lookout ahead and laterally upon the public street; failed to sound a warning of his approach; failed to swerve his truck or slacken its speed or stop it and thereby avoid striking the plaintiff, and that as the truck approached and reached the point of collision with the plaintiff, plaintiff was in a position of peril from such approach and movements, and defendant saw, or by the exercise of the highest degree of care could have seen, the plaintiff in said position of peril from which he was unable to extricate himself, or knew, or should have known, such facts in time thereafter, with safety to himself, his truck and to others, to have stopped the truck, slackened its speed, sounded a warning of its approach or swerved in time, by the exercise of the highest degree of care, to have prevented said collision and injury to the plaintiff, all of which the defendant negligently failed to do. The petition further pleads two ordinances of the City of Independence regulating the speed of trucks on the public streets therein, which ordinances plaintiff alleges the defendant violated at the time and place of the collision. Plaintiff alleged that the negligence, so described, was the proximate cause of his injuries pleaded.

Defendant answered, denying the charges of negligence and pleading contributory negligence in that plaintiff carelessly and negligently ran suddenly in front of defendant's truck at a time when it was so close that defendant was unable to avoid the collision with the plaintiff.

All of the points relied on by the plaintiff on this appeal (4 in number) present issues of law respecting instructions given at the request of defendant. The nature and extent of plaintiff's injuries, pleaded and proved, are in no way material to this review. Plaintiff in his brief, so states. Nevertheless, the testimony of seven doctors on the subject of plaintiff's injuries and treatment is included in the voluminous transcript. The record shows no steps by either party to exclude this mass of unnecessary record in the interest of the saving of time, labor and expense, available under Sections 512.110 and 512.120 RSMo 1949, V.A.M.S.; 42 V.A.M.S. Supreme Court Rules 1.04(a) (b) and 1.06.

The facts in evidence sufficient for the consideration of the errors in the instructions as charged in this appeal are: On the morning of May 24, 1948, plaintiff's father, as was his custom, walked to the regular stop on Winner Road, across from the place where 16th Street enters into that thoroughfare and forms a T-intersection with it. He was about to board a bus headed for Kansas City which had stopped at the usual place to permit him and others to get aboard. At that time plaintiff, then a boy 10 years of age, appeared across the street at 16th Street, and ran across Winner Road to the standing bus and obtained some money from his father, who then proceeded to board the bus. The plaintiff immediately started back in front of the standing bus toward the other side of Winner Road from which he had first come.

The plaintiff and his father testified that the plaintiff walked to a point 2 or 3 feet into the next or middle lane of Winner Road where plaintiff said he could see 15 or 20 feet around the bus; that plaintiff then stopped, looked to the right and left, waited until some traffic had passed, and then started to step forward and was then hit by defendant's truck as it passed the standing bus. No part of the truck ran over the plaintiff, but its right headlight hit him, knocking him to the pavement. According to the plaintiff's evidence, the place where

he was standing, when struck was 6 or 8 feet in front of the standing bus and 12 or 13 feet from the curb near which the bus was standing. Plaintiff said he saw the defendant's truck approaching at 20 miles per hour and within 3 or 4 feet of the front of the bus. An expert testified that defendant's truck, running at 10 miles per hour, could be stopped within 11.8 feet, and at 20 miles per hour could be stopped within 37.5 or 40 feet. The length of the bus was 39 feet and its width, 8 feet.

The defendant's evidence was that he had been following the bus and in the same lane. He stopped when the bus stopped. When he saw the operator signal him with his arm to pass the bus, defendant waited a moment for other traffic to pass and then started around the bus and shifted into second gear, passing within 2 or 3 feet alongside the bus; that when the front end of his truck had about reached the front end of the bus and he was travelling about 10 miles per hour, defendant saw the plaintiff run from around the front end of the bus and into the path of defendant's truck; that defendant caught sight of the plaintiff only a split second before the impact; that defendant had no time to swerve the truck nor to do anything except to throw on his brakes, which he did. Defendant estimated that he had travelled 54 or 55 feet from his stop behind the bus to his final stop after the collision; that he could stop at 10 miles per hour within 11, 12 or 15 feet; that he stopped within 15 feet after he saw the plaintiff was hit, or at about his cab's length in front of the bus.

Plaintiff's first point of error is that the court erred in giving Instruction 13, requested by the defendant because: "It submits antecedent negligence in a humanitarian, imminent peril instruction." Instruction 13 reads as follows:

"The Court instructs the jury that if you find and believe from the evidence that notwithstanding the fact that plaintiff had gotten himself in a position of imminent peril, that if you find

and believe from the evidence that in getting into such a position of·imminent peril that he ran across in front of the standing bus, into the path of the truck driven by the defendant, when the truck was so close that the defendant could not by the exercise of the highest degree of care avoid striking the plaintiff, either by swerving, stopping, signalling or turning aside, then you are instructed that you cannot find for the plaintiff under Instruction No. 3."

Plaintiff relies upon the rule, long since established, that contributory negligence is no defense to liability under the humanitarian doctrine. Silver v. Westlake, Mo., 248 S.W.2d 628; Welch v. McNeely, Mo., 269 S.W.2d 871. Plaintiff had submitted his case on the primary negligence theory by other instructions, to which defendant had requested and obtained converse instructions submitting contributory negligence. The plaintiff had also submitted his case on humanitarian doctrine by his Instruction No. 3, in which he had hypothesized the facts that plaintiff was attempting to cross Winner Road at 16th Street " * * * and came into and was in a position of imminent peril of being struck * * * by said truck * * *· and that defendant saw, or by the exercise of the highest degree of care could have seen the· plaintiff in such position of imminent peril, * * * in time thereafter * * * to have * * * prevented said collision * * *." Plaintiff's Instruction 3 also had told the jury that this was true, even though the jury found that the plaintiff was guilty of contributory negligence in getting into such position of peril. Defendant then requested and the court gave Instruction 13, which was evidently intended to be in partial converse of plaintiff's humanitarian Instruction 3. As shown, Instruction 13 told the jury it could not find in plaintiff's favor under Instruction 3 if the jury found that plaintiff had gotten himself in a position of imminent peril and " * * * if you find and believe from the evidence that ·in get-

ting into such a position of imminent peril that he ran across in front of the standing bus, into the path of the truck driven by defendant, when the truck was so close that the defedant could not * * * avoid striking the plaintiff * * *." The plaintiff contends that defendant thus injected antecedent contributory negligence into his humanitarian instruction. Plaintiff firmly insists that the issue as to what the plaintiff did "in getting into his position of imminent peril" is immaterial in a humanitarian instruction, and that its submission, as stated, was prejudicial error.

Defendant maintains that his Instruction 13 is not a verdict-directing instruction; that it merely informs the jury that the plaintiff could not recover if there was an inability on defendant's part to avoid the collision after the plaintiff got into a position of imminent peril, which was one of the elements necessary for plaintiff's recovery under the humanitarian doctrine. He says the instruction limits its application to plaintiff's position of peril at a time when there was no opportunity for the defendant to avoid striking him.

We cannot agree with defendant's construction of the part of his Instruction 13 in question. To submit the converse of defendant's liability after the plaintiff " * * * came into and was in a position of peril," it was not necessary to refer to his previous conduct of having "gotten himself into a position of peril" and " * * * in getting himself into such a position of imminent peril, that he ran across in front of the standing bus" when the truck was too close to be stopped. Instruction 13 does not limit the jury's consideration of the facts subsequent to the position of imminent peril, but directs the jury's attention to the conduct of the plaintiff before and leading up to the position of imminent peril. The humanitarian doctrine is not applicable while the plaintiff is merely approaching a position of imminent peril.

It was said in Godfrey v. Bauer, Mo., 252 S.W.2d 281, 285: "Assuming, as the in-

struction submits, that plaintiff was negligent in approaching the pathway of defendant's bus, nevertheless, some time, in his approach, plaintiff came into a position of imminent peril and the humanitarian rule seized upon the situation. It is elementary that contributory negligence has no place in the submission of negligence under the humanitarian rule. Obviously, a plaintiff's negligent conduct prior to the time when the humanitarian rule seized upon a situation may not, under the guise of sole cause, defeat plaintiff's recovery if defendant thereafter negligently failed to act in averting a tragedy."

In Catanzaro v. McKay, Mo., 277 S.W. 2d 566, the defendant's converse instruction on the humanitarian theory of the case advised the jury that defendant had the right of way at the intersection where the collision took place and hypothesized the defendant's assumption that the plaintiff would yield the right of way, and the effect of such assumption on defendant's ability to see and to know plaintiff's position of imminent peril in time to avoid the collision. The court (at pages 570–571) held the instruction erroneous because it was so drawn as to give the jury to " * * * understand that if plaintiff's failure to yield the right of way was a contributing cause to his injury he could not recover;" that "Whatever had transpired from the standpoint of either plaintiff or defendant prior to that time [position of imminent peril] could not affect the right of the parties thereafter."

The same principle is illustrated by the case of Faught v. Washam, 365 Mo. 1021, 291 S.W.2d 78, wherein the plaintiff was alighting on a bridge from his disabled automobile at night, when he had no red lights on the rear of his car and was struck by the defendant's car. Defendant's converse instruction in that case on the humanitarian theory in substance informed the jury that defendant had a right to assume an automobile would not be stopped in the nighttime on a public highway between certain prescribed hours, without a

red light of a stated capacity on the rear; that it was not the duty of defendant to stop, or change his course until he saw or could have seen plaintiff's car *so* stopped and that plaintiff was in a position of imminent peril, in time to avoid striking the plaintiff. This court ruled the instruction erroneous for various reasons, stating at page 82 of 291 S.W.2d that the reference to the absence of red lights on the rear of plaintiff's car " * * * savored of a charge of antecedent or contributory negligence not available in a humanitarian case. Since it was likely to be so understood by the jury, it was also erroneous for this reason. [Citations.]"

It was said by this court in Green v. Guynes, 361 Mo. 606, 235 S.W.2d 298, 304: "Appellants further contend that the trial court erred in refusing to give their requested instruction on sudden emergency. In the case of Teague v. Plaza Express Co., 354 Mo. 582, 190 S.W.2d 254, we held that a sudden emergency instruction in a negligence case submitted on the humanitarian doctrine should not be given. We hold the trial court properly refused this requested instruction."

In the Teague case referred to above, this court in 190 S.W.2d at page 258, said: "In so far as the jury are authorized (in submitting the issues of a humanitarian case) to consider conduct antecedent to the situation invoking the humanitarian rule in determining whether the defendant thereafter exercised due care, just so far is the humanitarian rule nullified and its purpose defeated; and responsibility for the injury to the helpless plaintiff * * * cast back upon his own contributory negligence * * *." The court pointed out that to consider the cause of a "sudden emergency" which constitutes a position of imminent peril in a humanitarian case would necessitate a consideration of the primary negligence of the plaintiff.

Among other authorities defendant cites and relies strongly on the case of Johnson v. Hurck Delivery Service, 353 Mo. 1207, 187 S.W.2d 200, 201, in which he claims an instruction almost identical with Instruction 13, was approved. We deem that case inapplicable here because the issue therein was not the submission of antecedent negligence or contributory negligence in a humanitarian case, but whether the boy in the case could have been seen by the defendant at the curb where the boy started across the street as claimed by the plaintiff, or, as claimed by the defendant, he could not have been seen by the driver of the defendant's approaching truck until the boy reached the center of the street in the line of traffic, to which point the defendant's instruction had hypothesized that the boy ran from behind a westbound car. This court said: "The only issue under the facts was whether the driver of defendant's truck could have seen Edward in time to have avoided the accident." No issue was made in that case as to the manner in which the boy went from the curb to the center of the street, or how he "got himself in such a position of imminent peril."

We feel constrained to hold and we so rule that the giving of defendant's Instruction 13 was prejudicially erroneous in the respect assigned. Sheerin v. St. Louis Public Service Co., Mo., 300 S.W.2d 483, 489.

■ Plaintiff next complains of defendant's Instruction 14, because of its opening sentence: "If you do not find under Instruction 3, then the court instructs you * * *." The sentence does not read: "If you do not find for defendant" or "for the plaintiff," or for whom or what, under Instruction 3. It was evidently intended as a converse instruction on plaintiff's case on primary negligence, and directs a verdict for the defendant. It is, however, incomplete in a material aspect, and on its face confusing. Upon retrial this error will no doubt be avoided.

■ Plaintiff claims error in Instruction 15, given at defendant's request, because the striking of the plaintiff was referred to therein as an "accident." In that instruc-

tion the jury's attention is directed to the "time and place of the accident in evidence." Obviously, the term "accident" was used in this instance merely for the purpose of reference to the occurrence in question, and not to characterize it as an incident without human fault. Creech v. Blackwell, Mo., 318 S.W.2d 342, 351. Furthermore, plaintiff not only did not object to the frequent use of that term in similar connection during the trial, but his counsel used it on countless occasions in the trial, in both direct and cross-examination of witnesses, and even in plaintiff's petition. Plaintiff is in no position to complain of its use in Instruction 15.

Plaintiff further objects to Instruction 15 in that, he claims, it fails to hypothesize sufficient facts and was too general and gave the jury a roving commission. Plaintiff asserts that the instruction, intended to be a converse of plaintiff's instruction submitting his case on primary negligence, fails to submit the distance between the plaintiff and the defendant's truck when plaintiff allegedly ran in front of the standing bus, nor whether the plaintiff was then so close that the truck could not be stopped, nor did it submit whether defendant could or should have sounded a warning of its approach after observing the position of the plaintiff. The only fact submitted by the instruction as to defendant's actions was that he was at the time in the exercise of the highest degree of care and "was not in any way negligent." Considering all the instructions together, as we must, we think the alleged acts of negligence on defendant's part in failing to avoid the collision, as set out in other instructions, were sufficiently identified for the purposes of Instruction 15, and that the jury was not confused by such words of submission. Creech v. Blackwell, supra, 318 S.W.2d at page 352.

Plaintiff's last point is that defendant's Instructions 13, 14 and 15, when read together, "* * * show a deliberate attempt to interject contributory negligence into a humanitarian case." This assignment presents nothing for appellate review. It fails to comply with Supreme Court Rule 1.08(a) (d). That rule requires that a point of error for review be stated to show what action or rulings of the trial court are claimed to be erroneous and why it is so contended. It is not contemplated that the point will be stated so generally as to require the court to search the record to find and to identify the grounds of complaint. Ambrose v. M. F. A. Co-operative Ass'n, Mo., 266 S.W.2d 647.

For the reasons stated the judgment should be reversed and the cause remanded.

PER CURIAM.

The foregoing opinion by DEW, Special Commissioner, is adopted as the opinion of the Court. The judgment is reversed and the cause remanded. All concur.