247 S.W.2d 635 (1952)
BRUMBACK
v.
SIMPSON.
No. 42303.
Supreme Court of Missouri, Division No. 2.
March 10, 1952.
Rehearing Denied April 14, 1952.
*636 Ira L. Childers, Ira B. McLaughlin, Kansas City, for appellant.
James Patrick Quinn, Alex D. Peebles and Quinn & Peebles, all of Kansas City, for respondent.
ELLISON, Judge.
The plaintiff-respondent Brumback recovered judgment below against the defendant-appellant Simpson for $15,000 damages for personal injuries sustained in a right-angled collision between their respective automobiles in Jackson County on April 30, 1949, about midnight. On this appeal the appellant contends the respondent was guilty of contributory negligence as a matter of law in admittedly failing to keep a lookout laterally ahead; and of the trial court's error in giving an Instruction No. 1 because it was too general in failing to hypothesize the specific facts, factual elements and circumstances attending the casualty.
Respondent was driving west on the north lane of four ten foot traffic lanes, two eastbound and two westbound, on new Highway 40 a main traffic artery, about one mile east of the city limits of Kansas City. The whole concrete highway was 40 feet wide and the total width 150 feet. It was 55 feet from the south edge of the slab to the south right-of-way line, but apparently there was no sign or mark to show it. And the ground further south was open. For a distance of one-fourth mile east of the point of collision the normal view westerly on Highway 40 was clear and the road somewhat down grade. But it had been sprinkling and was raining and lights were shining from the buildings along the Highway, which obscured respondent's view according to his testimony. He contended that in consequence he did not see appellant's automobile crossing the Highway northward from an open space on the south side thereof until he was within 35 or 40 feet of it and traveling 35 or 40 miles per hour, the collision occurring although he "slammed on" his brakes and turned to the left. At first he said appellant was headed "diagonally across the road," but in answer to the next question said it was "at direct right angles" with the highway.
On cross-examination respondent Brumback said he couldn't see the lights of appellant Simpson's automobile coming due north across the Highway until that car was about the middle thereof. Before that he hadn't looked angularly toward the open space on the south side because it was raining then and the windshield wiper was only clearing the inside 8 inches on the left (south) side of the glass windshield. He was looking down the northermost lane of the Highway on which he was driving, and didn't see appellant's car until it was half way across the intersection. At that time he (respondent) was 35 or 40 feet east of it.
It was shown that in a previous deposition respondent had stated he was startled when he saw appellant's car coming out from the south, and while he had immediately put on the brakes, they probably didn't take effect for two seconds. He conceded again that he didn't look at all "on the *637 south side of the highway" "because I had no business to," and that he didn't see any oncoming eastbound cars. On redirect examination he said that when he focused his vision to the west, the direction in which he was driving, his eyes normally would take in some "phase of both sides of a thing" [the road before him]. On cross-examination he was then asked, if the foregoing was true, how he could have failed to see to the south if he had looked, and then answered: "I didn't make it a point to look off to the side." He said he judged appellant was "shooting" out across the Highway at 20 miles per hour when he first saw him half way across.
Appellant-defendant Simpson was driving north across Highway 40 from the open space abutting the south side thereof, where his automobile had been parked, headed north, with the head and fog lights on. There was no highway there running north across Highway 40, but was one called Marsh Avenue starting north from the north side of the Highway, opposite the space on the south side from which appellant had emerged. This constituted an "intersection" within the meaning of RSMo 1949, § 301.010(6), V.A.M.S.
Appellant testified he and a man named Jack Dicus and two young ladies were out for a ride in his automobile, and stopped facing north in the open space on the south side of Highway 40 about 3 to 3½ feet from the edge of the slab because he thought he had a flat tire and also wanted to get gasoline. It was raining lightly at the time. His fog lights and front lights were on. Finding the tire was all right, he looked west and east along Highway 40 while standing on the ground, and saw no automobile approaching from either direction. He got back in his car and started to drive north across the pavement. At that time he looked east again and saw respondent's automobile approaching from that direction about 500 feet away, and traveling 35 or 40 miles per hour.
Appellant shifted to low gear and started due north across the highway, shifting again to a higher gear when he was about half way across, and pressing on the accelerator. He estimated the highest speed he attained was 8 or 10 miles per hour. It seemed to him the car approaching on the Highway (respondent's) increased its speed to 55 or 60 miles per hour and the two automobiles collided, the front end of respondent's car striking the right rear bumper and fender of appellant's car, which turned it heading northeast. When the cars came to a stop the front bumper of respondent's car was interlocked with the rear bumper of appellant's car in the intersection opposite Marsh Avenue. He testified that when he started north across Highway 40 he thought he had plenty of time to get across.
Respondent Brumback's son-in-law, Allen, and the latter's wife and baby and respondent's wife, were passengers in his car. Allen was in the front seat with Brumback. He said it was raining moderately and that he didn't see appellant Simpson's automobile until just before the collision when it was coming north directly across the Highway in front of them. It was about the center line, and about 25 to 40 feet from the Brumback car. The car had only one windshield wiper, on the driver's side. But Allen said he could see through the windshield, though not for its full width or for the full width of the road. On cross-examination he stated the speed of the Brumback car was about 30 or 35 miles per hour.
Appellant's contention that respondent was guilty of contributory negligence as a matter of law in failing to keep a lookout for him (appellant) when he emerged from his parking place south of Highway 40, is based principally on RSMo 1949, § 301.010(6), V.A.M.S., supra. The statute defines an intersecting highway as "any highway which joins another, whether or not it crosses the same". This means, of course, that both Marsh Avenue and Highway 40 were intersecting highways notwithstanding Marsh Avenue did not extend southward beyond the paved intersection. But apparently appellant further maintains that the 55 foot open right of way space abutting the south side of the paved intersection, in which appellant's automobile was parked, also was a part of the intersection; or at least that respondent Brumback in approaching the intersection on Highway 40 *638 was required under RSMo 1949, § 304.010, V.A.M.S. to exercise the same high degree of watchfulness and care with respect to that open space, where appellant's car was parked, as he was with respect to vehicles within the paved traffic intersection or in dangerous proximity thereto.
In our view this construction of Sec. 301.010(6), supra, is incorrect. It is true that the over-all property line, or right of way width of Highway 40 on that side, was 55 feet south of the south curb of the 40 foot pavement. And appellant's automobile was parked about three feet within that space. But there is nothing in this record to show that this 55 foot strip was marked or otherwise shown to be a part of the traveled highway. A few stop and school zone signs appear therein in the photographs brought up, but they obviously were addressed to motorists on the traveled portion of the highway. These photographs show only the open space of varying width clear out to the buildings and filling stations along the Highway.
We think Wheeler v. Breeding, Mo.App., 109 S.W.2d 1237, 1240, 1242-1245, is in point in this case. There, the plaintiff's truck was going east about eleven o'clock at night at a speed of 35 miles per hour, on the south or right lane of two lane Highway 66 near Waynesville. On the south side of the pavement was a gravelled open space about 70 feet wide extending to a cafe and utilized by its patrons as a parking place. When the plaintiff was about 200 feet west of the cafe and had reduced his speed to 30 miles per hour, he saw the defendant's truck and trailer slowing moving west parallel to and about 20 feet from the pavement. It suddenly turned north across the pavement about 30 feet in front of plaintiff's truck and the collision resulted.
The syllabus in that case, correctly reflecting the text, is as follows: "Plaintiff traveling along highway at about 35 miles per hour at night had right to rely on presumption that driver of defendant's truck and trailer emerging from private grounds with unobstructed view would not drive suddenly in front of plaintiff, and plaintiff was not required to decrease his speed, change his course, or give a warning, unless, in exercise of due care, a very careful and prudent person would have believed collision inevitable."
In the instant case the respondent Brumback's automobile was traveling west on the north lane of Highway 40 at a speed of 35 or 40 miles per hour. The appellant Simpson's car was parked off the pavement headed north. After he got in it and started in low gear to cross the 40 foot pavement he saw the respondent's car approaching from about 500 feet to the east. In fact he said it seemed to speed up to 55 or 60 miles per hour. When he (appellant) was about in the middle of the Highway 40 pavement and thought danger threatened he increased his speed and tried to continue across the pavement. And yet he judged his speed never exceeded eight or ten miles per hour. At that highest speed he could have traveled the 43 feet from the spot where he was parked south of the 40 foot pavement, plus the length of his car, in little more than three seconds. On the other hand respondent Brumback's car would have required over twice that timesubstantially eight secondsto travel at his highest estimated speed of 40 miles per hour, from the point 500 feet back, where appellant said he first saw him, to the point where respondent testified he first saw appellant's car 40 feet away.
Appellant argues further that respondent must have seen the head lights and fog lights of his car as he started and continued across Highway 40. But they were at a right angle to respondent's car, not showing as brightly as when faced head-on, and it was drizzling or raining. We cannot say as a matter of law that the respondent saw them and continued headlong into the collision. As the undisputed evidence shows, he then turned to the left but could not escape striking appellant's car, which had speeded up. In our opinion the case was for the jury as to respondent's contributory negligence.
Appellant's other assignment is that Instruction No. 1 given by the trial court at respondent's request was erroneous. The instruction was as follows, the italics therein have been inserted in appellant's brief to point to parts against which objection is *639 particularly made: "The Court instructs the jury that if you find and believe from the evidence that on May 1, 1949, plaintiff, Paul G. Brumback, was driving his automobile in a westerly direction along and upon the right hand side of Highway No. 40, at a point approximately one mile east of Kansas City, Missouri; and you further find that plaintiff was at all times exercising the highest degree of care for his own safety, and that at said time and place defendant, Harold Simpson, drove his automobile from grounds south of said highway, onto said highway and into the path of plaintiff's automobile at a time when plaintiff's automobile was approaching said point and was so close thereto as to constitute an immediate hazard, and at a time when said highway was not sufficiently free from approaching vehicles to permit defendant to cross said highway without danger of collision, if you so find, and if you further find and believe from the evidence that defendant was negligent in so driving his said automobile across the highway under the facts and circumstances above set out, if you find them to be the facts and circumstances under the evidence, and you further find that as a direct and proximate result of said negligence, if any, a collision occurred between the automobiles driven by defendant and plaintiff, and that plaintiff, Paul Brumback, as a direct and proximate result thereof was injured, then you will find the issues in favor of the plaintiff and against the defendant."
In his original brief defendant-appellant complains because the instruction did not contain a provision reciting that when the defendant-appellant drove his automobile from the side space onto the Highway and into the path of plaintiff-respondent's automobile he (defendant) knew or by the exercise of due care should have known that defendant's [evidently meaning plaintiff's] automobile was approaching said point from the east and was so close thereto as to constitute an immediate hazard; and that at said time and place defendant-appellant knew or by the exercise of due care should have known that the Highway was not sufficiently free from approaching vehicles to permit him (defendant) to cross the highway without danger of collision. We think there is no merit in this assignment. There is no dispute about the fact that defendant knew plaintiff's automobile was coming down the Highway. He had seen it approaching for 500 feet, and nevertheless continued on north across the Highway in front of plaintiff's car, the collision resulting.
The appellant complains in his reply brief that the instruction, quoting substantially: failed to recognize the reciprocal duties of the plaintiff-respondent and the defendant-appellant in the operation of their respective automobiles, and wholly omitted the requirement of a finding that the defendant-appellant knew or should have known that to cross the highway at the time and place mentioned in evidence he would create a traffic hazard. But the instruction does require a finding from the evidence that the plaintiff was at all times exercising the highest degree of care for his own safety, and that at said time and place the defendant-appellant was negligent in driving his automobile from grounds south of the highway on to the highway and into the path of plaintiff-respondent's automobile when the latter was approaching so close as to constitute an immediate hazard and at a time when the highway was not sufficiently free from approaching vehicles as to permit the defendant-appellant to cross the highway without danger of collision. We see nothing wrong in this for the reasons stated in the last paragraph.
Finding no error, the judgment is affirmed.
All concur.