John M. HERR, Respondent,

v.

Jessie M. RUPRECHT, Appellant.

No. 47395.

Supreme Court of Missouri,

Division No. 2.

Feb. 8, 1960.

Charles F. Hamilton, John S. Marsalek, Moser, Marsalek, Carpenter, Cleary, Jaeckel & Hamilton, St. Louis, for defendant-appellant.

Jerome L. Duff and George W. Cloyd, St. Louis, for respondent.

EAGER, Judge.

This is a suit for personal injuries alleged to have been suffered as the result of a collision of plaintiff's automobile with one operated by the defendant at a highway intersection in St. Louis County. A jury found for plaintiff and assessed his damages at $45,000. Defendant filed a motion for judgment in accordance with her motion for a directed verdict or, in the alternative, for a new trial. The trial court overruled the motion for judgment and ordered a remittitur of $22,500. Plaintiff remitted and defendant's motion for a new trial was also overruled. Defendant has appealed from the resulting judgment for $22,500.

The sole issue of negligence submitted to the jury was the violation of a provision of the right of way statute, § 304.021(4), Mo.Cum.Supp.1957 (see Laws 1953, p. 593, ¶ 19), V.A.M.S., which reads as follows: "4. The driver of any vehicle shall stop as required by this section at the entrance to a through highway and shall yield the right of way to other vehicles which have entered the intersection on the through highway or which are approaching so closely on the through highway as to constitute an immediate hazard. The state highway commission may erect stop signs at the entrance of any public road into a through highway."

■ On this appeal the defendant urges: (1) that the court erred in failing to direct a verdict for the defendant in that a submissible case of negligence was not made, and also because the plaintiff was guilty of contributory negligence as a matter of law; (2) that plaintiff's main verdict-directing instruction was reversibly erroneous; (3) that the trial court improperly restricted the defendant in oral argument; and (4) that the judgment is grossly excessive. In reviewing the evidence to determine if defendant's motion for a directed verdict should have been sustained, we consider it in the light most favorable to plaintiff, the prevailing party, and give him the benefit of all reasonable inferences. Layton v. Palmer, Mo., 309 S.W.2d 561, 564(1), 66 A.L.R.2d 1242.

The collision occurred on October 25, 1956, at about 9:15 p. m. at the intersection of U. S. Highway 66 and Cheshire Lane. Highway 66 is a through highway and at the place in question was 40 feet in width, running generally east and west; it consisted of four traffic lanes, each ten feet wide, two eastbound and two westbound. There was a twelve-foot shoulder on the south side of the pavement and an eight-foot shoulder on the north. Cheshire Lane, running north and south, intersects Highway 66 at right angles. Its pavement was 36 feet wide and flared to 60 feet at the edge of the shoulder on the south side of Highway 66 and to a somewhat greater width where it joined the pavement. On the north side Cheshire widened to 70 feet at the edge of the north shoulder. At the southeast and northwest corners of the intersection the State Highway Commission had erected stop signs on Cheshire for the control of traffic. To the east of the intersection, Highway 66 is fairly straight and level for a distance of about 500 feet and the view for that distance is unobstructed.

On the night in question the plaintiff and his wife had attended a movie in downtown St. Louis and were returning to their home in the southwest part of St. Louis County, traveling in a westwardly direction on Highway 66. It had been raining since they left the theater about 8:30 p. m. Plaintiff's wife had dozed off shortly after leaving the theater and she was asleep in the right front seat of the car when the collision occurred. The plaintiff was driving a 1950 Chevrolet, in good mechanical condition; as he approached the intersection he was traveling at about 40 miles per hour; the posted speed limit in that area was 50 miles per hour. The rain was "fairly heavy"; it was "between moderate and heavy" and appeared to be coming from the south. The windows of the car, including the one on the driver's left, were closed and the windshield wipers were in operation. Plaintiff's headlights were on

low beam which, he said, enabled him to see better because on rainy nights "on high beam you don't get as much light as you do on low beam. It reflects too far back." The plaintiff estimated that his headlights shone ahead of him a distance of about 30 feet on the pavement and with the reflection he could see another 20 feet, or a total distance of about 50 feet. Because of weather conditions, he could not see as far as on a clear night.

Plaintiff was driving in the most northern traffic lane with the right side of his car about a foot from the north edge of the pavement. When he was approximately 50 feet from the center line of Cheshire, he saw defendant's car moving north in the intersection ahead of him. He tried to apply his brakes but was unable to stop, and he struck defendant's car at about its right front door. The plaintiff, his wife, and the defendant were all injured, and the cars were practically demolished. There were no other cars within view on either highway at the time of the collision. As he approached the point where "Cheshire cuts away," plaintiff glanced to his right and his left for traffic and saw nothing. He could not estimate the speed of defendant's automobile, but testified that it was in motion, going slower than his. He could not say definitely whether the headlights or taillights of defendant's car were burning, but he did not see any lights on it. Plaintiff did not have time to swerve his car and he did not recall whether he sounded the horn. He did not think his brakes had time to take effect before the collision occurred. There was expert testimony that an automobile at 40 miles per hour travels 60 feet per second, and that the average reaction time is three-fourths of a second during which time an automobile so moving travels 44 feet.

The defendant stood on her motion for a directed verdict and offered no evidence. Portions of her deposition, read in evidence by plaintiff, tended to show: that she was driving north on Cheshire Lane in a 1956 Lincoln owned by Ruprecht Building Materials Company of which she was President; that when she arrived at the Highway 66 intersection, she stopped the car about a half-car length from the south edge of the highway and looked both ways; that she probably could see as far as a quarter of a mile to the east, but seeing nothing, she started across "like I always did"; that she did not see the plaintiff's automobile at any time prior to the collision.

F. Kenneth Fletcher, a member of the Missouri State Highway Patrol who arrived at the scene very shortly after the collision, testified that it had been raining and the pavement was wet; that he found broken glass, chrome strips, dirt and other debris on the pavement "to the north side of" Highway 66, and in the "general vicinity * * * of the center" of Cheshire Lane. This description, aided by his markings on a plat in evidence, placed the debris in the north portion of the northeast quadrant of the intersection. This witness further testified: that he interviewed the defendant at the hospital where she was on an X-ray table; that apparently she had been drinking, for the odor of alcohol on her breath was strong enough that he could detect it without bending over; that her speech was not coherent, but he did not know whether her incoherence was from drinking or shock; that he got very little information from her, and that she told him: "I don't know what happened." It was admitted in the opening statement of defendant that she had had two glasses of beer on the evening in question prior to the collision.

The plaintiff suffered contusions and abrasions, a concussion, and a sprain of the right knee; the latter seems to have consisted of the tear of a ligament. He was in the hospital six days, received diathermy treatments for six or seven weeks, returned to his same job on January 15, 1957, about 80 days after the injury, and thereafter worked regularly. His treatments ceased in April 1957, but he testified that the knee remained sore and painful when he went back to work, and that its movments were somewhat limited. Thereafter it continued

to improve, but it still remained somewhat painful and it ached; complete movement had not been restored. He used oil of wintergreen on it and wore a plastic bandage. After working for about fourteen months and on March 10, 1958, plaintiff "stepped from the truck on a piece of ice, and my feet went out from under me," and he injured his "knees." Thereafter his right knee became sore and painful and although he continued to work for a week, he then went to his physician; the knee was X-rayed, he was hospitalized and the knee was operated on. The operation consisted of the removal of a torn meniscus. While the doctors failed to define the term, it apparently refers to a fibrocartilage of the knee. A normal convalesence followed, with treatment by physiotherapy, heat and massage. Shortly prior to trial, on September 10, 1958, there was full extension of the knee, a slight limitation in flexion, some weakness and some atrophy of the muscles of the front of the thigh. There was medical testimony that plantiff would continue to have for at least 10–20 years an aching of the knee when bent, pain when it was bumped or struck, some limitation in his activities, and that he might develop arthritis; also, that plaintiff would have had a "useful" knee if he had only suffered the first injury. At the end of June 1958, plaintiff started back at his job on the milk route but found that he could not do the climbing required; on July 6 he began the operation of a Gulf Oil Company filling station, on lease, with two full-time helpers; he had continued in that work to the time of trial, taking an active part in the operations. He testified, however, that he could not bend the knee normally, and that this interfered somewhat with his work. He had engaged to some extent in bowling and cork-ball since the second injury.

 Our inquiry with respect to the sufficiency of the evidence will be limited to defendant's alleged violation of the right of way statute which was the only issue of negligence submitted. Farmer v. Taylor, Mo.App., 301 S.W.2d 429, 434 [9]; Karr

v. Chicago, R. I. & P. R. Co., 341 Mo. 536, 108 S.W.2d 44, 48 [2]. The defendant properly asserts that the proof of negligence cannot rest upon guesswork, speculation, or conjecture and that the mere fact of collision is not sufficient to establish defendant's negligence. Miller v. Wilson, Mo.App., 288 S.W. 997, 999; Bates v. Brown Shoe Co., 342 Mo. 411, 116 S.W.2d 31, 33; Fritz & Groh v. St. Louis, I. M. & S. R. Co., 243 Mo. 62, 148 S.W. 74, 79. However, the fact that a collision occurred and the manner of its happening are evidentiary facts which must be taken into consideration in determining the sufficiency of the evidence, especially in this type of case where the essential question is whether the plaintiff's vehicle was "approaching so closely on the through highway as to constitute an immediate hazard" and whether the defendant knew or should have known of such danger.

The defendant construes the evidence as establishing that she had not only entered the intersection before the plaintiff did, but that she had proceeded so far as to be entitled to the right of way, citing cases such as Minnis v. William J. Lemp Brewing Co., Mo.App., 226 S.W. 999; Wilson v. Toliver, 365 Mo. 640, 285 S.W.2d 575, and Creech v. Blackwell, Mo., 298 S.W.2d 394. Defendant stresses the plaintiff's testimony that the front of defendant's car was north of the north edge of the pavement when he first saw it. This particular testimony is not conclusive against the plaintiff, since it appears that he was then undertaking to estimate or "judge" the position of the front of the car, and almost immediately thereafter he testified that he did not know where the front of defendant's car was at the time of impact. Furthermore, this appears to be at variance with certain other testimony of the plaintiff and the evidence of physical facts. He testified, and it was not denied, that the defendant's automobile was moving, that the front of his car struck the defendant's automobile at the right front door, that he was in the north traffic lane with the right side of his car

about a foot from the pavement edge when he saw defendant's car, and that he did not swerve before the collision. The highway patrolman located the usual debris in the northern traffic lane of Highway 66 from which it could be inferred that the collision occurred there. From this and the other evidence in the record, the jury could very well find that although the defendant entered the intersection first, she drove into the immediate path of plaintiff's vehicle when it was dangerously near the collision point.

By the enactment of § 304.021, the general assembly intended to codify and establish the passage rights and duties of vehicle drivers in and at intersections in a variety of situations. There is a provision giving, generally, to the first one who enters an intersection the right of way over another approaching the intersection from a different highway, but that is not applicable to the facts of this case. Here the plaintiff was traveling on a "through highway" and the defendant was on a "public road" on which the state highway commission had erected "stop signs" as authorized by the statute. This situation is specifically covered by paragraph 4 of § 304.021 quoted above. Defendant's statutory duty extended beyond stopping at the entrance to the intersection and giving preference to vehicles already in it. She was also required to yield the right of way to vehicles approaching the intersection so closely on the through highway as to constitute an immediate hazard. And defendant's duty to "yield the right of way" existed not merely at the entrance and while she was stopped, but it continued with her into the intersection if and when it appeared (or reasonably should have appeared) to her that plaintiff's approach had then created an immediate hazard; this is true, at least to the extent that she might then be able to stop or slacken and let the other car pass. See Wilson v. Toliver, 365 Mo. 640, 285 S.W. 2d 575, 582; James v. Berry, Mo.App., 301 S.W.2d 530. In other words, the duty to "yield" may not be wholly disregarded once

a motorist gets the front end of his vehicle into an intersection with a through highway. Those highways are designed to handle a great volume of traffic and to move it faster than on intersecting roads. The statutory provisions for right of way are consistent with this purpose. Plaintiff was a traveler on a through highway running at a lawful rate of speed. In this situation the defendant could not pre-empt the right of way by the simple expedient of entering the intersection first, and the evidence certainly did not establish, as a matter of law, that she had legally pre-empted the intersection here.

The defendant further contends that the evidence was insufficient to prove that when her car entered the intersection the plaintiff's car was so close as to constitute an immediate hazard, because there was no evidence from which the jury could determine the position of plaintiff's car at the time the defendant "started across the intersection." Defendant cites, to a large extent, humanitarian cases where evidence of a driver's ability to avoid the collision is imperative and precise calculations are often required. The theory may have some analogy here, but we cannot decide this case upon the peculiar characteristics of that doctrine, nor are we required to make precise calculations. Defendant's statement of the point and her whole argument emphasize the time of her entering the intersection which, as we have noted, does not establish her right of way under the statute. Also important is the proximity of plaintiff's automobile and the manner and dispatch with which the defendant made or intended to make the crossing. Certainly here plaintiff was "approaching,"—at *some* distance and at 40 miles per hour. He was within a range where a collision was likely to occur, and by defendant's own evidence she could see for probably a quarter of a mile eastwardly. Defendant's rate of speed in miles per hour was not shown but, in her written argument, her counsel calculate the distance plaintiff's car would have covered at 40 miles per hour while the defendant

would have moved the 53 feet necessary for her to clear the crossing at assumed speeds ranging from two to ten miles per hour. This computation serves at least to demonstrate that the statutory language "so closely * * * as to constitute an immediate hazard" is a variable term, depending in part on matters peculiarly within the knowledge and control of the driver crossing the through highway. For one intending to cross an intersection at two miles per hour, an approaching vehicle might be so close as to constitute an immediate hazard when it would not be such for one crossing at ten or more miles per hour. From plaintiff's evidence and the physical facts, it may be inferred that defendant was moving very slowly just prior to the collision.

 It was not necessary for the plaintiff to prove directly his distance from the intersection when the defendant entered it, or the speed at which the defendant was crossing. We think that this evidence fairly supports an inference that at some point, either when defendant entered the intersection or while she was proceeding slowly therein and still south of plaintiff's line of travel, plaintiff's car was so close as to constitute an "immediate hazard," and that defendant's duty to *"yield"* arose. On all the evidence we conclude that a submissible case was made on the issue as submitted. There are some factual differences in plaintiff's cited cases (Pitts v. Garner, Mo., 321 S.W.2d 509, 519; James v. Berry, Mo.App., 301 S.W.2d 530, 533; Reimers v. Frank B. Connet Lumber Co., Mo., 271 S.W.2d 46, 48, 50), but the principles are sufficiently applicable. See, also, generally, Sullivan v. Union Electric Light & Power Co., 331 Mo. 1065, 56 S.W.2d 97, 100.

 The defendant next contends that the plaintiff was guilty of contributory negligence as a matter of law "in operating his automobile toward the intersection at a speed of 40 miles per hour with headlights which enabled him to see only 50 feet ahead." Plaintiff's contributory negligence

was a jury question unless it may be said, from all the evidence and the inferences most favorable to plaintiff, that the only reasonable conclusion is that plaintiff was negligent. Johnson v. Lee Way Motor Freight, Inc., Mo., 261 S.W.2d 95, 96. In support of this contention the defendant relies upon § 304.350(2), Mo.Cum.Supp. 1957 (Laws 1955, p. 626), V.A.M.S., which provides: "There shall be a lowermost distribution of light, or composite beam so aimed and of sufficient intensity to reveal persons and vehicles at a distance of at least one hundred feet ahead; * * *." The defendant says that plaintiff's headlights "were required to be such as to reveal objects on the highway at least one hundred feet ahead." The defendant and the statute both emphasize the view forward or "ahead." Plaintiff's testimony as to the effective distance of his headlights and his stopping distance consisted essentially of estimates, and he also testified that his lights were "bright." His testimony as to the sufficiency of his headlights was directed primarily to the distance at which they would reveal objects "up the highway" ahead of him. Here the atmospheric conditions were abnormal in that a moderately heavy rain was falling; the car windows were closed, and the windshield wipers were operating; the intersection was protected by a stop sign; plaintiff testified that he saw no lights on defendant's car (though this may fall short of establishing that there were none); and defendant entered the intersection at a right angle from plaintiff's left so that she did not immediately enter the direct beams of plaintiff's lights. Compare Brumback v. Simpson, Mo., 247 S.W.2d 635, 638. Circumstances may be such as to make a violation of this statute a question of fact rather than a question of law; we note that defendant here did not submit any such issue as one of fact. We decline to hold as a matter of law that plaintiff was guilty of a violation of the statute. There is necessarily some elasticity in the application of this statute, depending upon the circumstances present.

**650**

Haley v. Edwards, Mo., 276 S.W.2d 153, 158–159; Poehler v. Lonsdale and Kurn, 235 Mo.App. 202, 129 S.W.2d 59, 66. By way of analogy see also: Johnson v. Lee Way Motor Freight, Inc., Mo., 261 S.W.2d 95; Thompson v. Byers Transportation Co., 362 Mo. 42, 239 S.W.2d 498. Even if we were to assume that the plaintiff was negligent because his headlights were legally insufficient, it would not follow as a matter of law that such violation was a contributory cause of the accident because of the angle at which the defendant entered the plaintiff's path and range of vision. Bowman v. Heffron, Mo., 318 S.W.2d 269, 274. We do not consider the case of Nickels v. Borgmeyer, Mo.App., 258 S.W.2d 267, as directly in point because of factual differences.

■ Defendant asserts that the verdict is excessive, even after the remittitur. We have determined that it is; this, for the reason that there is no substantial evidence to show that plaintiff's fall in March 1958 and its attendant results were in any way caused by the knee injury suffered in the previous collision. Considerable evidence was admitted to show the results of this fall; plaintiff asserts that defendant is precluded from raising the point here because she did not preserve it by objections or motions at the trial, and that no specific ruling of the trial court is pointed out as error. This is true, but we still have the duty, on a claim of excessiveness, to determine whether there is substantial evidence to support the verdict. If all the injuries suffered here were properly attributable to negligence of the defendant, we would hesitate to interfere with this verdict after reduction by remittitur, although it still would be liberal. Here plaintiff testified that he had worked regularly, at his same job and for the same compensation, for about fourteen months following the automobile collision and prior to the fall, although continuing to have some soreness, tenderness and pain in the knee. He had had no medical treatment for almost a year at the time of the fall. This suit was filed more than a year prior to the second injury. On March 10, 1958, plaintiff fell, when stepping out of his milk truck, and his own description of the occurrence was: "I stepped from the truck on a piece of ice, and my feet went out from under me"; he further stated that in the fall he injured his "knees." It was not even shown that he stepped from the truck on his right (injured) leg when he "slipped." The most that can be said of the testimony of his doctors on this score is that it established that the first injury left a weak right knee, which might "bother" him later, and which would be more susceptible to injury upon some future trauma. Their statements to the effect that the condition of the right knee following the original injury played a part in the later fall are and can be nothing but speculation. The actual cause of the fall was a matter founded entirely in plaintiff's own knowledge, and demonstrable to him in his own feelings and symptoms at the time. Perhaps a doctor might interpret and draw opinions as to the cause from symptoms actually testified to by the plaintiff, but there were none. We do not need a doctor to interpret the meaning of a slip on the ice. Plaintiff attributed the fall positively to a slip on the ice, a thing which may happen to anyone with good or bad knees. The doctors could not fill in this gap.

■ We have considered the cases of Creech v. Riss & Co., Mo., 285 S.W.2d 554, and Bowyer v. Te-Co., Inc., Mo., 310 S.W.2d 892, where the consequences of subsequent injuries were held to have been properly considered. In those cases there was some evidence indicating that the *cause* of the second injury was the condition resulting from the first; in Creech, as plaintiff put his left foot on a smooth concrete pavement, [285 S.W.2d 560] "there was a strain on it and it just gave way on me and I went down"; in Bowyer, as plaintiff attempted to step up on a porch with his injured leg and foot it "would not hold him," [310 S.W.2d 898] and he fell. The court there stated the ultimate question to be:

"Was there substantial evidence from which the jury reasonably could find that the second fracture was the natural and probable consequence of the negligence of defendant which produced the first fracture?" We hold that there was not such evidence here. The defendant can only be liable for such consequences as are the direct and proximate result of her negligence; there was insufficient evidence here to make a jury issue on the question of causation with reference to the fall of March 1958 and its effects. To that extent there is no evidence to support the verdict. Plaintiff's condition after the second injury was considerably more serious than it was after the first. It is obvious that the jury considered the results of both; its verdict was in the sum of $45,000, which so shocked the trial court that a remittitur of $22,500 was ordered. It is impossible for us to say now how much of the remaining $22,500 should be attributed to the first injury and how much to the second. The only alternative is a retrial.

It will be unnecessary for us to consider the asserted errors in restricting the argument of defendant's counsel, and in the giving of plaintiff's Instruction No. 1. In redrafting that instruction upon a retrial, however, plaintiff's counsel should be guided by the objections made here, for the instruction is at least technically erroneous. While we have not discussed specific errors in detail, we cannot say that the trial of the question of liability was wholly free of error; and we have determined that upon retrial the jury should have the entire picture, both as to liability and damages. This disposition is also indicated by the size of the original verdict, which indicates at least probable passion and prejudice on the part of the jury. See, generally, Taylor v. St. Louis Public Service Co., Mo., 303 S.W.2d 608.

The judgment will be reversed and the cause remanded for retrial. It is so ordered.

LEEDY, P. J., concurs.

STORCKMAN, Judge. . . . . .

I fully concur in the opinion of the court. Additionally, I would hold the giving of Instruction No. 1, plaintiff's verdict-directing instruction, to be reversible error.

The chief complaint made against the instruction is that it requires the jury to find the defendant negligent without hypothesizing a necessary statutory element, that the plaintiff's car was approaching the intersection *so closely* as to constitute an immediate hazard.

The instruction is in two paragraphs. The first is an abstract statement of the law based on § 304.021(4). It tells the jury that under the law of Missouri an automobile driver approaching an intersection with a through highway at which a stop sign is erected has a duty to stop and "to yield the right of way to other vehicles on the through highway which are approaching *so closely* on through highway as to constitute an immediate hazard." Italics supplied.

The second paragraph of the instruction advises the jury, inter alia, that "in this connection" if the jury further finds "that defendant failed to yield the right of way to the automobile of John M. Herr and operated her Lincoln automobile into the aforesaid intersection at a time when the approaching automobile of John M. Herr constituted an immediate hazard," and further finds that defendant's conduct was negligent and the direct and proximate cause of the collision and plaintiff's injuries the verdict shall be in favor of the plaintiff and against the defendant.

There is no hypothesis of the statutory element of closeness or proximity either by the use of definite distances or by employing the general term of the statute. This much should be minimal. I do not think we should encourage instructing on less than the statute requires. The plaintiff seeks to excuse the omission of the words "so closely" in the second paragraph, the verdict-directing part of the instruction,

by the fact that they are included in the abstract statement of law contained in the first paragraph.

Instructions containing abstract declarations of law have frequently been condemned by this court but, unless such instructions are clearly misleading, generally a judgment should not be reversed for that reason. Benjamin v. Metropolitan St. Ry. Co., 133 Mo. 274, 34 S.W. 590, 593.

Mere abstract statements of legal propositions do not make proper instructions, and an instruction authorizing the jury to return a verdict for a party must require the finding of all essential fact issues necessary to establish the legal proposition on which the right to the verdict is based. Stanich v. Western Union Tel. Co., 348 Mo. 188, 153 S.W.2d 54, 56 [1]; Carson v. Evans, 351 Mo. 376, 173 S.W.2d 30, 31 [1]; Cuddy v. Schenewark, Mo., 231 S.W. 2d 689, 690 [1].

A pertinent statutory provision may be hypothesized as an evidentiary fact to be considered along with other facts and circumstances in evidence. Creech v. Blackwell, Mo., 318 S.W.2d 342, 350 [5]. But the statutory element denoting proximity does not appear in the verdict-directing part of the instruction before us; it only appears as a part of the abstract statement of the statutory law.

The plaintiff has cited cases such as Reimers v. Frank B. Connet Lumber Co., Mo., 271 S.W.2d 46, 51 [7, 8], and Pohl v. Kansas City, Mo., 238 S.W.2d 405, where it was held there was either no omission or it was cured by the substitution of substantially equivalent language. These cases are not applicable to this case. Here the abstract statement of law in the first paragraph of the instruction cannot aid the verdict-directing part or supply omissions in it; on the contrary, it tends to present a conflict. By virtue of the omission, the jury is authorized to find for the plaintiff without including an essential factual element and a recovery is permitted if the ap-

proaching car constitutes an immediate hazard for any unspecified reason, such as, for example, speed, atmospheric conditions and lighting, or natural hazards as hills and curves. Under the statute it is only where the hazard is created by the closeness or proximity of the approaching automobile on the through highway that the defendant is required to yield the right of way. In my opinion the omission presents a conflict between the first and second paragraphs of the instruction which is confusing and misleading.

If a conflict exists I can see no difference whether it occurs in the same instruction of a party, between two instructions of the same party, or between an instruction of the plaintiff and the defendant. A long line of cases holds that such a conflict between instructions of the plaintiff and the defendant is prejudicial error. In Banta v. Union Pac. R. Co., 362 Mo. 421, 242 S.W.2d 34, 42, this court, speaking of the omission of a statutory element, states: "Thus instruction 1A fails to require a finding by the jury that defendant violated the Act. Our law requires that an instruction submitting plaintiff's case to the jury and predicating his recovery must include all the essential elements of plaintiff's case. Griffith v. Delico Meats Products Co., 347 Mo. 28, 145 S.W.2d 431, 435(3); State ex rel. Long v. Ellison, 272 Mo. 571, 199 S.W. 984, 987(4). And the failure to include an element essential to plaintiff's recovery in an instruction predicating plaintiff's verdict cannot be cured by any instruction given for defendant. State ex rel. Long v. Ellison, supra."

I would hold the instruction to be prejudicially erroneous for failure to hypothesize the proximity of plaintiff's approaching automobile. Hatfield v. Thompson, Mo., 252 S.W.2d 534, 543 [12]; Lillard v. Bradford, 241 Mo.App. 538, 243 S.W.2d 359, 365–366. In the Lillard case the court held that plaintiff's instruction was erroneous because "it authorized a verdict against defendant for failure to stop before enter-

ing the intersection, regardless of where plaintiff's truck was at the time or any other conditions which would lead defendant to believe that a collision would occur if he did not stop."

There are additional questions not presented on this appeal which might be raised with respect to the propriety of the instruction. In redrafting, it should be considered whether scienter, which is such knowledge as charges a person with the consequences of his act, should be hypothesized, Reimers v. Frank B. Connet Lumber Co., supra, 271 S.W.2d 51 [7, 8], and whether lack of reference to the degree of care required tends to impose a stricter liability than § 304.010 which requires the exercise of the highest degree of care. It should be noted that the right of way laws and ordinances do not relieve the operators of motor vehicles at and in an intersection from the exercise of the highest degree of care for their own safety and the safety of others. Witt v. Peterson, Mo., 310 S.W.2d 857; Douglas v. Whitledge, Mo.App., 302 S.W.2d 294; Wilson v. Toliver, 365 Mo. 640, 285 S.W.2d 575, 583 [14], and Burke v. Renick, Mo.App., 249 S.W.2d 513. It should be noted that plaintiff pleads that defendant failed to exercise the highest degree of care in not yielding the right of way but he does not submit it in this fashion. Consideration should also be given to the holding in Moore v. Ready Mixed Concrete Co., Mo., 329 S.W.2d 14, that where contributory negligence is submitted, it is error for the plaintiff not to negative contributory negligence in his instruction. These and perhaps other matters should be critically examined. See generally Brumbach v. Simpson, Mo., 247 S.W.2d 635, 638–639[3], and Sullivan v. Union Electric Light & Power Co., 331 Mo. 1065, 56 S.W.2d 97, 101.

I would reverse and remand for the additional reason that Instruction No. 1 is prejudicially erroneous.