Emily SCHAETTY and Otto Schaetty, Appellants,

v.

Mickey Dale KIMBERLIN, Respondent.

No. 49740.

Supreme Court of Missouri,

Division No. 2.

Jan. 13, 1964.

Blackwell & Blackwell, James A. Blackwell, Hillsboro, for plaintiffs-appellants.

Dearing, Richeson & Weier, H. L. C. Weier, Hillsboro, for defendant-respondent.

PRITCHARD, Commissioner.

Plaintiffs, husband and wife, jointly brought their actions against defendant for personal injuries arising out of a rear end collision which occurred on February 18, 1961, on U. S. Highway 61–67 at its intersection with Highway C (old highway 61) which leads to the U. S. Highway 61–67 in Jefferson County, Missouri. Plaintiffs' prayers for damages are respectively $7,··

500 and $17,500. From the judgment upon verdict against them, both plaintiffs prosecute this appeal.

U. S. Highway 61–67 is a modern, concrete surfaced, four-lane divided highway, running generally in a north-south direction, two lanes going northward twenty-four feet wide, and two lanes going southward, also twenty-four feet wide, these four lanes being separated by a dirt divider. Highway C also runs generally north and south and parallel to U. S. Highway 61–67, but near its point of intersection therewith, it makes a rather sharp turn to the east and leads up to the new highway. Upon Highway C, on the south side just at the intersection is a stop sign. Farther over, on the divider between the north and south lanes, and on the south part of the intersection is a yield sign facing westerly. The concrete crossover of Highway C at this point is fifteen feet wide. To the south, U. S. Highway 61–67 ascends and then curves to the east, there being a crest of a hill in that direction approximately 300 to 500 feet in distance. To the north from the intersection, U. S. Highway 61–67 continues to descend in a gradual slope.

According to the version of Otto Schaetty of the facts and circumstances of the collision, he was driving his Ford Falcon Ranchero, his wife, Emily, sitting beside him, northwardly on Highway C at a speed of 35 to 40 miles per hour. As he neared the stop sign on the west side of U. S. Highway 61–67, he slowed and stopped to allow southbound traffic to clear the intersection, then proceeded across the southbound lanes to the crossover area and there again stopped. He then looked to the south for northbound traffic, saw none coming for a distance of 300 feet and he then proceeded north on U. S. Highway 61–67, and after proceeding approximately 150 feet north in the outside northbound lane, and while going approximately 25 miles per hour, the Ranchero was struck directly in the center of its back by defendant's vehicle, which had approached the intersection at between 50 and 55 miles per hour. The testimony of

Emily, Otto's wife, substantially corroborated the foregoing, but she said that Otto came almost to a dead stop at the yield right of way signs where she looked south and did not see any other cars, and she said to Otto, "OK, Shad, there's no machine coming," and he pulled onto the right of the highway and started to go straight.

Defendant testified that before he got to the intersection he had passed a car and was in the process of going back to the right-hand lane. As he approached the intersection he was operating his car at a speed between 50 and 55 miles an hour. He noticed Otto's Ranchero coming down the hill at about 30 or 35 miles an hour. Defendant turned his attention back to the road, and just as he got to the intersection he noticed Otto just crossing the divider line, the crossover, at which Otto did not stop, and defendant applied his brakes, making rubber skid marks 70 feet long. Defendant lost traction and slid up to the other vehicle, colliding with it in the rear right side with the left front side of defendant's vehicle. Defendant's left front tire blew out and the left front dropped down immediately, causing scars on the concrete highway up to the point of contact. Defendant said the point of impact was a foot and a half to the left side of the painted center divided strip and at the north end of the concrete crossover. As Otto came through the yield sign without stopping he was going at least 20 miles an hour, and the rear of his Falcon slid around slightly as he turned north to his left.

J. K. Wondell testified by deposition (at the time of trial he was in the U. S. Army stationed at Fort Benning, Georgia) that he was employed as a patrolman with the Missouri State Highway Patrol on February 18, 1961, at which time he investigated the accident. He arrived there at 4:10 P.M. after the accident had happened at about 3:30 P.M. He found Otto's Ranchero pickup on the east shoulder of the highway headed north approximately 300 to 350 feet north of the crossover. The defendant's vehicle was approximately 150 feet north

of the crossover, off the highway and down a slight embankment which was northeast of the intersection. He observed tire marks starting in the northbound lane close to the divider strip on the island, then going over to the outside lane, the lane closer to the east shoulder of the highway, and off the shoulder down the embankment to the 1957 Chevrolet (defendant's vehicle), the total distance of these tire marks was 180 feet. The first 70 feet of the tire marks led to scratch marks in the surface of the pavement (concrete had been gouged from the pavement leaving an impression) at the north end of the crossover, approximately about the center of the two lanes. From the scratch marks on the surface of the pavement, the tire marks led up to defendant's vehicle (which was about 75 feet down the embankment) for the additional distance of 110 feet.

For defendant, Mary Ann Kertz testified that she was going south on U. S. Highway 61–67 to Farmington, on the day of the automobile collision, and that she witnessed it. She was driving in the right-hand lane of the two southbound lanes, and saw Mr. Schaetty's vehicle coming down the side road at a speed, when she first saw him, of about 40 miles per hour, then he seemed to make an effort to slow down to about 30. She said Otto did not stop at the stop sign or the yield sign, and as he got to the yield sign she saw him look to the south and accelerate his automobile at which time he slid on the loose gravel in the middle and his car swerved out in front of defendant's car. Mrs. Kertz saw the actual impact which was just a short way up from the intersection.

Plaintiffs urge as error the action of the trial court in giving on behalf of defendant three instructions numbered D–5, D–6 and D–7.

Plaintiffs submitted their cases upon the primary negligence of defendant in allowing his vehicle to collide with the rear end of their Falcon Ranchero.

Instruction D–5, directed toward Emily's case, submits as the sole cause of the occurrence the acts of Otto.

We do not set out any of these instructions in full, but mention is made only of those parts toward which plaintiffs' attack is levelled. Instruction D–5 requires the jury to find that there was a stop sign at the west side of U. S. Highway 61–67, that there was a "yield right of way" sign facing drivers coming from the west on the crossover strip between the traffic lanes. The jury is required further to find that Ottto drove his motor vehicle in which the plaintiff, Emily, was riding across the southbound lanes of said highway, the crossover strip, and into the northbound lanes of the highway at said intersection without stopping or yielding the right of way at a time when the automobile operated by defendant was approaching so closely as to constitute an immediate hazard. The instruction then leaves it to the jury to find that the failure to do said hypothesized acts was negligence which was the sole cause of Emily's injuries, and that the same was not due to any negligence of defendant as submitted in other instructions. Then upon a finding of all submitted items a verdict is directed against Emily upon her Count I of the petition.

Plaintiffs claim that instruction D–5 singles out and emphasizes that portion of the evidence relating to the stop sign, and that it in effect told the jury that Otto had the duty to stop at the stop sign at the west side of U. S. Highway 61–67 (when his stopping or not stopping at that point could have been no proximate cause of the collision), and instruction D–5 also in effect instructed the jury that Otto had the duty to stop at the yield right of way sign at the crossover.

■ According to defendant's version of all the facts (which under Watt v. St. Louis Public Service Company, Mo., 354 S. W.2d 889, 893[9], he was entitled to have the jury consider) leading up to the collision, as testified to by witness Kertz, Otto

came down the hill of Highway C at a speed of 40 miles per hour, slowed to 30 miles per hour, did not stop at the stop sign, but continued on to the crossover and did not stop (or yield) the right of way to the northbound vehicle of defendant but drove out in front of it. These are all *evidentiary* facts showing a course of conduct (close in point of time and distance) to be considered by the jury in arriving at its ultimate conclusion as to whether or not Otto was negligent, as submitted, in failing to yield the right of way to defendant's closely approaching vehicle. See Herr v. Ruprecht, Mo., 331 S.W.2d 642, 647[2–4], and Creech v. Blackwell, Mo., 318 S.W.2d 342, 350. We explain that by "evidentiary" we mean, in the context here presented, that the fact that Otto may have failed to stop at the stop sign is relevant in that it may bear upon the probability of the ultimate fact relied upon by defendant as a defense that Otto failed to yield the right of way and drove out in front of defendant's closely approaching vehicle. See definitions of "evidentiary fact," 15A Words and Phrases 48; Abeles v. Wurdack, Mo., 285 S.W.2d 544, 548. The evidence supports the aforesaid submission and finding of the sole (and proximate) cause of the collision. The instruction did not tell the jury that Otto's failure to stop at the stop sign was the proximate cause of Emily's injuries, nor did it exclude any consideration by the jury of other evidence, or instruct the jury as to the weight to be given to the submitted facts, none of which was unduly singled out or emphasized.

The duties of drivers entering a through highway (such as U. S. Highway 61–67 here) from a side road upon which a stop sign had been erected, are governed by Section 304.021 subd. 4, RSMo 1959, V.A.M.S. (enacted Laws 1953, p. 587, § 1), which is as follows:

"The driver of any vehicle shall stop as required by this section at the entrance to a through highway and shall yield the right of way to other vehicles which have entered the intersection on the through highway or which are approaching so closely on the through highway as to constitute an immediate hazard. The state highway commission may erect stop signs at the entrance of any public road into a through highway."

It was said in Herr v. Ruprecht, Mo., 331 S.W.2d 642, 648[5, 6, 7], in construing the identical statutory provision as here, "Defendant's statutory duty extended beyond stopping at the entrance to the intersection and giving preference to vehicles already in it. She was also required to yield the right of way to vehicles approaching the intersection so closely on the through highway as to constitute an immediate hazard. And defendant's duty to 'yield the right of way' existed not merely at the entrance and while she was stopped, but it continued with her into the intersection if and when it appeared (or reasonably should have appeared) to her that plaintiff's approach had then created an immediate hazard; this is true, at least to the extent that she might then be able to *stop* or *slacken* and let the other car pass." (Emphasis added.) See also Garrison v. Ryno, Mo., 328 S.W.2d 557, 566, under which it was held that the statute did not impose an absolute, unqualified duty to stop in obedience to a stop sign, but the surrounding facts and circumstances control, e. g., as here, a closely approaching vehicle on the through highway.

 The emphasized words in Herr, supra, dispose of plaintiffs' contention that instruction D–5 wrongfully instructed the jury that Otto had the duty to stop at the yield right of way sign. If a stop is then required under the existing circumstances in order that the right of way may be *yielded* to closely approaching vehicles, then a stop it must be, such fact to be determined by the jury.

Instruction D–6 is a contributory negligence submission directed towards Otto's case (Count II of the petition). Complaint is substantially the same concerning D–6 (and below in D–7) as was made against

D-5, above discussed, in respect to the submission of the existence of the stop sign on the west side of U. S. Highway 61–67. Instruction D–6, for the ground of Otto's contributory negligence, is also his failure to yield the right of way to defendant's automobile which "was approaching so closely as to constitute an immediate hazard." Certainly if the jury found this submission to be true, which it did as indicated by the verdict, Otto cannot recover.

■ There obviously could be a better wording of the preliminary evidentiary fact in the instruction which submits initially, "The Court instructs the jury that if you find and believe from the evidence that on the occasion mentioned in evidence, the plaintiff, Otto Schaetty, *stopped, or did not stop* for a stop sign, on the West side of U. S. Highway 61–67 * * *." (Emphasis supplied.) Plaintiffs' evidence was that Otto did stop at the stop sign, and contrarily, defendant's evidence was that he did not stop. The evident meaning of the instruction is *whether or not* Otto stopped at the stop sign, if the jury further found that he moved forward and entered the lane of the highway upon which defendant was driving at a time when defendant was approaching so closely as to constitute an immediate hazard, then the jury could find contributory negligence which would defeat Otto's claim under Count II of his petition. The jury could not have been misled by the alternative words used in D–6.

■ Plaintiffs say also that D–6, in submitting that Otto "turned in front of the defendant. * * * and did not yield the right of way at said intersection" imposed upon him the absolute duty not to turn in front of the defendant. Plaintiffs again overlook the qualifying requirement for the jury to find that at the time defendant was closely approaching, which if true would not give Otto the legal right to proceed into the intersection and turn north, and thus there is no merit in such assignment of error. Garrison v. Ryno, supra.

■ Instruction D–7 directs a verdict against Otto upon defendant's counterclaim upon the hypothesized acts of Otto as negligence in failing to keep a careful and vigilant lookout ahead and laterally for other vehicles on U. S. Highway 61–67, including defendant's vehicle, and (again) in failing to yield the right of way to defendant's automobile when it was approaching so closely as to constitute an immediate hazard. By its verdict, the jury found against both plaintiffs on their claims, and for the defendant on his counterclaim but assessed defendant's damages at "none." It necessarily follows that the jury found that plaintiff, Otto, was negligent in the submitted respects in this instruction, and that defendant was not negligent in allowing his automobile to collide with the rear end of Otto's Ranchero, which was submitted for a finding by the jury in the plaintiffs' two main instructions.

The matter of the propriety of the submission in instruction D–7 of the existence of the stop sign and Otto's failure to obey it is above discussed and ruled. Plaintiffs do not seem to attack specifically the lookout portion of the instruction, but they do cite Harrellson v. Barks, Mo.App., 326 S. W.2d 351. In that case, it was held that it was not shown that a failure to look at the time defendant was sliding her wheels after she had looked and seen plaintiff in the intersection had anything to do with the collision; hence the instruction submitting that fact was misleading. Here, the jury could reasonably find that plaintiffs' failure to keep a vigilant lookout occurred before defendant had reached the intersection, from which a causal relation could be found. Clark v. Portman, Mo.App., 357 S. W.2d 728, 730[3].

All of these instructions, D–5, D–6 and D–7, fairly and clearly submit to the jury the ultimate issue of Otto's negligence, and none of them direct the attention of the jury away from that issue as submitted in each, by the hypothesis of facts concerning the existence of the stop sign and Otto's acts relative thereto. Neither are the instruc-

tions argumentative or unduly repetitious, nor do they give the jury a roving commission, as claimed by plaintiffs.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.